IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 09-CV-02388-REB-BNB

ANTHONY NATHANIEL ROMERO,

Plaintiff,

v.

JAMES LANDER, M.A., L.P.C., Colorado Dept. of Corrections
Sex Offender Treatment Program Coordinator, individually and in
his official capacity, and COLORADO DEPARTMENT OF
CORRECTIONS

Defendants.
_____

**SECOND AMENDED COMPLAINT**
_____

Plaintiff Anthony Nathaniel Romero complains against defendants as follows:

**Parties**

1. Plaintiff Anthony Nathaniel Romero ("Plaintiff") is a natural person and citizen of the State of Colorado. Plaintiff is currently serving a 32 year sentence imposed by a Colorado state court. Plaintiff is incarcerated in a Colorado state prison located within Colorado.

2. Defendant Colorado Department of Corrections ("CDOC") is that division of the Colorado state government charged with the management of Colorado state prisons.

3. Defendant James Lander ("Lander") is a natural person and is Program Coordinator for CDOC's Sex Offender Treatment and Monitoring Program ("SOTMP").

## Jurisdiction & Venue

4. In taking those actions complained of below, CDOC and Lander acted, and continue to act, under the authority and/or color of state law.

5. This civil rights action is brought under §§ 1983 & 1985 of Title 42 of the United States Code (42 U.S.C. §§ 1983 & 1985). It seeks a declaration that the regulations and procedures followed by CDOC and Lander in classifying inmates who have never been convicted of any sexual misconduct as sex offenders violate U.S. CONST. AM. XIV § 1 (substantive and procedural due process), U.S. CONST. AM. V (privilege against self-incrimination), and U.S. CONST. ART. I § 10 (*ex post facto* laws prohibited).

6. Plaintiff also seeks attorneys' fees, costs of suit, and interest pursuant to statute.

7. Jurisdiction and venue are proper in this Court under 42 U.S.C. § 1983 and/or 42 U.S.C. § 1985.

## Statement of Facts

8. Plaintiff is serving a 32 year term and is currently placed at Centennial Correctional Facility ("CCF") in Cañon City, Colorado. This sentence is for second degree assault. The sentence was enhanced for habitual offenders under Colorado law.

9. Plaintiff has absolutely no credible history of any sexual misconduct whatsoever. He has never been convicted of any sex offense, and no person anywhere at any time has ever even suggested that he is guilty of any form of sexual misconduct, save only on the following occasion: In 1993, Plaintiff's ex-girlfriend, who was neither the alleged victim nor even conscious at the time, claimed that Plaintiff touched her daughter's covered thigh

while burglarizing her house. The vindictive ex-girlfriend coached the little girl to claim this, as further narrated below.

10. These lies were nonetheless recorded in police reports. These police reports were later incorporated into a pre-sentence investigative report.

### Factual Basis for Single Alleged Act of Sexual Misconduct

11. In 1993, Plaintiff was dating a woman named Corinne Salazar ("Salazar").

12. Plaintiff's relationship with Salazar was tumultuous and largely held together, while it lasted, by the couple's mutual interest in drugs: They were both drug addicts and drug dealers.

13. Salazar had a reputation for dishonesty and in the early 1990s maliciously accused certain individuals, including, without limitation, her own brother, as well as one Arnold Trujillo, of sexual misconduct, solely out of vindictiveness and to create legal entanglements for them.

14. At a certain point, Plaintiff and Salazar broke up. Salazar went back to her ex-husband.

15. One night, Plaintiff crept through a window at Salazar's house for the purpose of retrieving certain personal items belonging to him.

16. This house was a triplex.

17. While inside the house, he also stole some cash from some trousers he found on the floor just outside the master bedroom in the basement. From that position, Plaintiff could see Salazar in bed, asleep, with her ex-husband.

18. At no point in time did Plaintiff enter the master bedroom. At no point in time did Plaintiff

see any child in the master bedroom, whether in the bed or otherwise.  At no point in time did Plaintiff even see the little girl.

19. After taking the cash and certain items belonging to him, Plaintiff exited the house through the front door.

20. Upon discovering that Plaintiff had been in the house, Salazar called the police.  The police came and took statements from some or all of those persons who were in the house the night before.

21. As part of her statement, Salazar claimed that she was in bed, asleep, with her seven year old daughter between herself and her ex-husband at the time Plaintiff allegedly entered the room.

22. Salazar claimed that when Plaintiff entered the room, her daughter saw Plaintiff and said "Leave."  Salazar claimed that Plaintiff said "I'm tired."

23. Salazar claimed that, at some point during this alleged exchange, Plaintiff brushed his arm along the blanket covering the girl's thigh.

24. Both adult occupants admitted that they remained asleep during this alleged encounter.  They allegedly based their claims upon what the little girl allegedly told them.

25. On the other hand, one of Salazar's older sons came forward to say that the little girl had been coached to make these claims, and that they were were utterly false.

26. The claim that Plaintiff touched the little girl, or even saw the little girl, on the night in question is utterly untrue and was made maliciously.

27. Nevertheless, among those charges brought against Plaintiff there was at least one

involving sexual assault upon a minor.

28. Plaintiff freely admitted entering Salazar's dwelling on the night in question and stealing the cash.

29. At all times, Plaintiff denied vehemently any suggestion that he had touched, much less seen, the little girl.

30. At one or more hearings in that case, even the trial court expressed doubt about the factual basis for any claim of sexual misconduct.

31. For example, the trial court seemed troubled by the claim made by Salazar and/or her ex-husband that they heard the door of the triplex shut two floors above them when Plaintiff left, but heard none of the conversation or other alleged activity within the master bedroom where the little girl allegedly slept, sandwiched between them.

32. The prosecution also expressed doubt as to the viability of any claim involving sexual misconduct, and readily abandoned that claim.

33. Plaintiff eventually pled guilty to criminal trespass as part of a plea bargain, thus avoiding first degree burglary charges.

34. When accepting Plaintiff's plea, the court queried Plaintiff about his decision to plead guilty to criminal trespass. During this colloquy, Plaintiff expressed his reservations because of the fact that he had been charged with sex crimes that were utterly unfounded and of a particularly odious nature, given that they involved a small child. Plaintiff expressed his desire to go to trial over those charges if there were any doubt whatsoever about those charges affecting him in any way in the future.

35. The trial court explained to Plaintiff that there would be no lasting effects from the fact that a sex crime had been alleged and charged, and assured Plaintiff that "dismissed means dismissed." Plaintiff's counsel concurred. The prosecutor, who was also present, either also concurred or did nothing to disabuse Plaintiff of these assurances.

36. Plaintiff relied upon these assurances in not insisting upon a trial of these issues.

### The First Incarceration

37. After Plaintiff pled guilty to criminal trespass, the court sentenced him to imprisonment.

38. Plaintiff commenced serving his sentence for criminal trespass sometime in or around 1993.

39. In or around 1995, CDOC, or persons charged by CDOC with classifying inmates as sex offenders, attempted to classify Plaintiff as a sex offender.

40. Plaintiff resisted this classification, but CDOC personnel refused to permit him access to the grievance process, told him the classification was not something he could challenge, and otherwise deflected Plaintiff's attempts to resist the classification.

41. Plaintiff was released on parole in or around 1995.

42. While on parole, Plaintiff's parole officer instructed Plaintiff to register with local authorities as a sex offender.

43. Plaintiff refused to register as a sex offender.

44. Plaintiff's parole was revoked, and he was returned to prison.

45. Plaintiff did not persist in contesting this classification because he was soon released, suffered no adverse consequences after release, and did not expect to return to prison.

### The Second Incarceration

46. In or around 1999, Plaintiff returned to prison for violation of a restraining order and attempted escape while in police custody.

47. In May of 2000 CDOC served Plaintiff with a "Notice of Right to an Administrative Review".

48. This document informed Plaintiff that, as an inmate "who has never been convicted of a sex offense . . . but [who] has a history of sexual behavior that may justify a sex offender designation", he was entitled to an "Administrative Review" to challenge any such designation.

49. This document informed Plaintiff that he was entitled to a hearing upon request.

50. This document also informed Plaintiff that he would be able to present documentary evidence and call witnesses of his choosing to rebut any such designation.

51. This document also informed Plaintiff that the sole basis for CDOC's attempt to classify him as a sex offender was the "Presentence Report dated 11/23/93, indicating the factual basis for the offense was sexual in nature, and that a plea bargain was made."[1]

52. Plaintiff demanded a hearing.

53. Plaintiff listed witnesses.

54. The administrative hearing was scheduled for Sept. 13, 2000 and held on that date.

55. An audio- or video-tape recording was made of the administrative hearing.

---

[1] The Nov. 23, 1993 pre-sentence investigative report will be referred to herein as the "PSIR".

56. At the administrative hearing, Plaintiff was not permitted to present witnesses.

57. At the administrative hearing, the sole evidence presented to the effect that Plaintiff has ever been guilty of any form of sexual misconduct was the PSIR.

58. At the administrative hearing, Plaintiff was given only a limited ability to rebut the PSIR.

59. During or immediately after the administrative hearing, the hearing panel imposed (or re-imposed) an "S-4" designation of Plaintiff, classifying him as someone who is guilty of unconvicted sexual misconduct.

60. In so doing, the hearing panel stated:

    [Y]ou will be classified a sex offender based on the following evidence and reasons.
    
    a. You behaved in a sexually violent and abusive manner, based on the following evidence: *[no evidence listed]*
    
    b. Your behavior could threaten the safety of the public upon release, or the safety of prison staff and offenders, for the following reasons: *[no reasons given]*
    
    c. You have not offered any credible explanation that would avoid the conclusion that you have behaved in a sexually violent and/or abusive manner, and that behavior may threaten the safety of the public upon release, or the safety of facility staff and offenders. *based on PSIR that inmate fondled 7 [year old child].*[2]

61. After the hearing, CDOC forced Plaintiff into choosing between participating in SOTMP or suffering a reduction in the maximum number of earned time days he could earn each month.

62. Before an inmate is allowed to participate in SOTMP, he is required to sign an admission

---

[2] Italics used here to indicate handwritten portion of ruling.

that he is a sex offender.

63. Because Plaintiff has never committed any form of sexual misconduct, he refused to admit to being a sex offender.

64. Because Plaintiff refused to admit to being a sex offender, he was rejected by SOTMP.

65. Because Plaintiff was rejected by SOTMP, CDOC deducted four days of earned time credit from what Plaintiff otherwise earned each month.

66. Plaintiff was released on parole in or around 2003.

67. While on parole, Plaintiff's parole officer instructed Plaintiff to register with local authorities as a sex offender.

68. Plaintiff refused to register as a sex offender.

69. Plaintiff's parole was revoked, and he was returned to prison.

70. Plaintiff discharged his sentence and was released in or around 2005.

71. Plaintiff did not challenge the classification because he was not initially facing a long sentence, knew of no adverse consequences after discharge, was permitted to visit with his children and retain photographs of them, and chose to accept the cap on his ability to earn earned time credits for the remainder of that incarceration.

## The Third Incarceration

72. In or around July of 2006 Plaintiff returned to prison after being sentenced for second degree assault.

73. Because the trial court determined that Plaintiff is an habitual offender, the trial court enhanced the sentence.

74. Plaintiff is currently serving a 32-year sentence.

75. On or around May 22, 2009, CDOC informed Plaintiff that it had conducted a review of his SOTMP file from prior incarcerations and had determined that it would reimpose the "S-4" classification imposed during those prior incarcerations.

76. This review was conducted entirely outside of Plaintiff's presence without notifying Plaintiff or giving him any opportunity whatsoever to be heard.

77. As a result of this review, Plaintiff was subjected to new and more stringent restrictions.

78. For example, CDOC took away all photographs in Plaintiff's possession which show his children.

79. For example, CDOC has refused to permit Plaintiff any visits with his children.

80. For example, CDOC has restricted Plaintiff's ability to send mail to, or receive mail from, his children.

81. For example, CDOC makes notations in Plaintiff's file, indicating his refusal to participate in SOTMP. These notations will become part of any materials considered by any parole board.

82. As a result of this review, Plaintiff is otherwise treated as if he were a child molester and otherwise subjected to the opprobrium and stigma of one who had committed such acts.

83. On or about June 3, 2009, Plaintiff completed a CDOC "Offender Grievance Form" contesting the classification, requesting that it be removed from him or, at the very least, that he be given the opportunity through proper evaluations and tests to prove that the designation is improper.

84. CDOC denied the requested relief, again relying upon the 1993 plea agreement and PSIR as well as the fact that the "DA pursued charges."

85. In its denial, CDOC offered to permit Plaintiff to undergo a "parental risk assessment . . . at his own cost" but noted that "he is not in a location where such an assessment can be completed" and also informed him that "due to his previous criminal history [. . .] it is unlikely that he would qualify as low risk to minors."

86. In its denial, CDOC affirmed "that [Plaintiff] would not be allowed to have any contact with minors, up to and including pictures."

87. Plaintiff filed a second Offender Grievance Form on July 13, 2009, again protesting the designation and again challenging the factual basis.

88. This second grievance was likewise denied.

89. Plaintiff has never been convicted of any sex offense anywhere, at any time.

90. No credible person anywhere, at any time, has ever suggested that Plaintiff is guilty of any form of sexual misconduct, save only CDOC and Lander, who base their determination on certain lies nested within double-hearsay that have never been subjected to any adversarial testing.

91. Plaintiff is now stigmatized as if he were a child molester.

92. In addition, Plaintiff is treated differently than other similarly-situated inmates: He may not correspond with his children; he may not retain photographs of his children; and he may not visit with his children.

93. In addition, Plaintiff must now face any parole board with this stigma, together with the

added stigma that he has refused treatment and refused to participate in SOTMP.

94. A precondition to participation in the SOTMP is that the inmate admit to having commit the alleged sex offense.

95. Plaintiff has refused to admit to any sex offense.

96. Plaintiff's refusals to admit to any sex offense are noted in his file.

97. Plaintiff's file and/or such notations will be considered by any parole board considering whether or not to release Plaintiff on parole.

98. The sex offender label and Plaintiff's refusal to admit to any sex offense or otherwise participate in SOTMP will make it difficult or impossible for him to obtain release on parole.

### First Cause of Action – Procedural Due Process

99. The allegations contained in paragraphs 1 - 98, above, are incorporated by reference.

100. In failing to provide Plaintiff with adequate notice and a meaningful opportunity to be heard, one or both defendants have violated Plaintiff's right to due process as guaranteed by the Fourteenth Amendment to the United States Constitution.

101. In providing no criteria whatsoever for the sort of evidence that may be relied upon in deciding whether or not to impose the sex offender designation upon persons never convicted of a sex offense, one or both defendants have violated Plaintiff's right to due process as guaranteed by the Fourteenth Amendment to the United States Constitution.

102. In providing no notice whatsoever that a designation imposed during one incarceration would foreverafter follow an inmate should he ever again return to prison, one or both

        defendants have violated Plaintiff's right to due process as guaranteed by the Fourteenth Amendment to the United States Constitution.

103.    In tacitly allowing the internal sex offender designation to be used by parole officers to try to force persons who have never been convicted of a sex offense to register as sex offenders when out on parole, one or both defendants have violated Plaintiff's right to due process as guaranteed by the Fourteenth Amendment to the United States Constitution.

104.    These violations were proximately caused by the conduct of CDOC and Lander, one or both of which are persons within the meaning of 42 U.S.C. § 1983.

105.    In committing these violations, CDOC and Lander acted under color of Colorado state law.

WHEREFORE, Plaintiff requests that relief set forth below.

## Second Cause of Action – Substantive Due Process

106.    The allegations contained in paragraphs 1 - 105, above, are incorporated by reference.

107.    As described above, CDOC, Lander, and those acting under them, have based their determination that Plaintiff should be classified as an "S-4" sex offender on: (i) the fact that charges for sexual assault upon a minor were once brought against Plaintiff based upon a police report that was the product of one or more police officers merely recording the false utterances of persons known to lie and with a motive to lie; (ii) the fact that, for a time at least, an assistant district attorney for the State of Colorado maintained those charges before abandoning them; and (iii) the fact that that history and those charges were referred to in the PSIR before Plaintiff was sentenced for criminal trespass.

108. None of these bases referred to in paragraph 107, above, consists of evidence in any reputable judicial or administrative forum. They consist of, instead, lies repeated as hearsay within hearsay. They are the false utterances of a woman who was unconscious at the time of the alleged sex offense, who witnessed nothing, and who coached her young daughter to lie.

109. At no time has Plaintiff had any opportunity to challenge in any meaningful way the bases referred to in paragraph 107, above.

110. The factual basis of the crime to which Plaintiff pled guilty in 1993 – criminal trespass – in no way suggests sexual misconduct.

111. No element of criminal trespass necessarily brings with it any suggestion of sexual misconduct.

112. CDOC's and/or Lander's action in crediting these untested and utterly unreliable bases, while ignoring actual evidence before them, is abusive and shocking to the conscience and violative of the substantive due process guaranteed by the Fourteenth Amendment to the United States Constitution.

113. CDOC's and/or Lander's action in creating, for themselves, a forum in which they can arbitrarily and capriciously classify persons who have never been convicted of any sex offense as sex offenders with no cognizable standards of evidence whatsoever is abusive and shocking to the conscience and violative of the substantive due process guaranteed by the Fourteenth Amendment to the United States Constitution.

114. These violations were proximately caused by the conduct of CDOC and Lander, one or

both of which are persons within the meaning of 42 U.S.C. § 1983.

115. In committing these violations, CDOC and Lander acted under color of Colorado state law.

WHEREFORE, Plaintiff requests that relief set forth below.

### Third Cause of Action - Fifth Amendment Right Against Self-Incrimination

116. The allegations contained in paragraphs 1 - 115, above, are incorporated by reference.

117. Plaintiff never committed the alleged sex offense. Indeed, on the night in question, he neither saw the little girl nor entered the room in which the little girl allegedly slept between her parents. The allegation that he committed a sex offended during the burglary was false and uttered by a malicious ex-girlfriend.

118. CDOC requires, as a precondition to participation in SOTMP, that the inmate admit to the sex offense used to classify that inmate as a sex offender.

119. If an inmate refuses to admit to the sex offense, he is not allowed to participate in SOTMP.

120. If an inmate is not allowed to participate in SOTMP because he refuses to admit to the sex offense, CDOC retaliates by taking those actions described above, including, without limitation: capping the maximum earned or good time credits an inmate may earn; placing restrictions upon who may visit the inmate; confiscating any photographs the inmate may have of his own children; attempting, nonetheless, to force a paroled inmate to register as a sex offender with local law enforcement; and making negative entries in Plaintiff's file that will become part of any materials to be reviewed by any parole board and will cast

       Plaintiff in a false negative light, making parole difficult or impossible to achieve.

121. These actions violate Plaintiff's Fifth Amendment right against self incrimination because they subject Plaintiff to an unconstitutional degree of compulsion to admit to something which he never did and which is not otherwise subjected to any meaningful form of evidentiary or adversarial testing.

122. These violations were proximately caused by the conduct of CDOC and Lander, one or both of which are persons within the meaning of 42 U.S.C. § 1983.

123. In committing these violations, CDOC and Lander acted under color of Colorado state law.

WHEREFORE, Plaintiff requests that relief set forth below.

### Fourth Cause of Action - *Ex Post Facto* Clause

124. The allegations contained in paragraphs 1 - 123, above, are incorporated by reference.

125. The alleged sex offense occurred in 1993.

126. Those statutes and those regulations relied upon by CDOC in classifying Plaintiff as a sex offender, or otherwise in taking action to attempt to compel him to admit to a sex offense he did not commit, or otherwise in taking action to attempt to generate an administrative adjudication that he is a sex offender, were enacted after the date of the alleged sex offense.

127. In the alternative, the interpretations given to any such statutes and regulations existing at the time of the alleged offense were created after the date of the alleged sex offense in order to capture Plaintiff within the definition of "sex offender," or to compel him to admit

to a sex offense he did not commit, or otherwise in taking action to attempt to generate an administrative adjudication that he is a sex offender, were enacted after the date of the alleged sex offense.

128. These actions, in turn, are part of a scheme to permit defendants the widest possible latitude in classifying inmates before, during, and after their prison terms, and whether on probation or after a sentence is fully discharged, as sex offenders, even when the inmate in question has never been convicted of a sex offense. *See, e.g.,* C.R.S. § 16-22-103(2)(a)(persons convicted after July 1, 1994 of non-sex crimes but with factual basis indicating sexual misconduct can be forced to register as sex offenders); *see also* C.R.S. § 16-22-103(2)(d)(II)(C)(CDOC can classify inmates as sex offenders who must register).

129. These actions violate the prohibition against *ex post facto* law inasmuch as they increase or "stiffen" Plaintiff's punishment.

130. These violations were proximately caused by the conduct of CDOC and Lander, one or both of which are persons within the meaning of 42 U.S.C. § 1983.

131. In committing these violations, CDOC and Lander acted under color of Colorado state law.

WHEREFORE, Plaintiff requests that relief set forth below.

### Prayer for Relief

WHEREFORE, Plaintiff requests that this Court:

A. Enjoin Defendants, and each of them, from classifying Plaintiff as any form of sex offender;

B.   Enjoin Defendants, and each of them, if they wish to classify Plaintiff as any form of sex offender, to do so only after reasonable notice and an opportunity to be heard, and only then after producing at least some evidence meeting at least some criteria of reliability;

C.   Enjoin Defendants, and each of them, from subjecting Plaintiff to any form of compulsion to admit to odious crimes that he did not commit;

D.   Enjoin Defendants, and each of them, from enhancing or "stiffening" Plaintiff's punishment in any way based upon sex offender classification and treatment schemes post-dating the 1993 alleged sex offense;

E.   Award Plaintiff all available damages and interest according to proof; and

F.   Award Plaintiff his reasonable attorney's fees and costs.

*Respectfully submitted this twenty-eighth day of June, 2010:*

RICHARD BYRON PEDDIE, P.C.

By: Richard Byron Peddie
1601 Flemming Drive
Longmont, Colorado 80501
Tel.: 303.444.5447
Fax: 501.639.6038
E-mail: lawstudios@comcast.net

## CERTIFICATE OF SERVICE

I hereby certify that on June 28, 2010, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following e-mail addresses:

> JOHN W. SUTHERS, Attorney General
> c/o Jennifer S. Huss, Assistant Attorney General
> Civil Litigation & Employment Law Section
> 1525 Sherman Street – Seventh Floor
> Denver, Colorado 80203
> [jennifer.huss@state.co.us]

and I hereby certify that I have mailed or served the document or paper to the following non CM/ECF participants in the manner (mail, hand-delivery, etc.) indicated by the non-participant's name:

    n/a

> RICHARD BYRON PEDDIE, P.C.
>
> */s/ Richard Byron Peddie*
>
> By: Richard Byron Peddie
> 1601 Flemming Drive
> Longmont, Colorado 80501
> Tel.: 303.444.5447
> Fax: 501.639.6038
> E-mail: lawstudios@comcast.net