IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.  09-cv-02477-PAB-KLM

JOSEPH WARR,

  Plaintiff,

v.

ARISTEDES W. ZAVARAS,
LT. GERALD SCRUGGS,
CAPTAIN GONZALES,
IVETT RUIZ, and
RICHARD BOLDRIDGE,

  Defendants.

---

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

  This matter is before the Court on Defendants' **Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6)** [Docket No. 24; Filed March 15, 2010] ("Motion to Dismiss").  After receiving several extensions of time, Plaintiff filed a Response in opposition to the Motion to Dismiss on May 3, 2010 [Docket No. 35].  Defendants did not file a reply.  Pursuant to 28 U.S.C. § 636(b)(1) and D.C.COLO.LCivR 72.1C.3., the Motion to Dismiss has been referred to this Court for recommendation.  The Court has reviewed the Motion, Plaintiff's Response, the entire case file, the applicable law and is sufficiently advised in the premises.  For the reasons set forth below, the Court respectfully **RECOMMENDS** that the Motion to Dismiss be **GRANTED in part and DENIED in part**.

### I. Summary of the Case

  Plaintiff, who is proceeding *pro se*, is currently incarcerated at the Bent County

Correctional Facility ("BCCF") in Las Animas, Colorado [Docket No. 32]. In October 2009, Plaintiff filed an action pursuant to 42 U.S.C. § 1983 asserting that Defendants violated his First, Fifth and Fourteenth Amendment rights. *Complaint* [#3] at 8-10. Defendants are employed by the Colorado Department of Corrections ("CDOC"). Plaintiff filed an Amended Complaint on January 4, 2010, which is the operative pleading for purposes of resolving the Motion to Dismiss [Docket No. 7].

Plaintiff's claims stem from the CDOC's classification of him as a sex offender. The facts giving rise to Plaintiff's Amended Complaint are as follows. While on parole in August 2001, Plaintiff claims that his parole officer informed him that he had been classified as a sex offender at a hearing held in 2000. *Amended Complaint* [#7] at 4, 8.[1] According to Plaintiff, he has never been convicted of a sex crime and was not given notice of the hearing or an opportunity to participate. *Id.* at 4-6, 8. After learning that he had been classified as a sex offender, Plaintiff was required to participate in sex therapy or face incurring a parole violation. *Id.* at 5. He chose to participate in sex therapy and did not raise any challenge to his classification. *Id.* After his participation in sex therapy, Plaintiff claims that his parole officer "then informed me that he could not force me to participate [in sex therapy] . . . ." *Id.* Plaintiff's sentence and parole were discharged in November 2003, but he was not required to register as a sex offender. *Id.* at 4-5.

Subsequently, Plaintiff was sentenced for the commission of a new crime in February 2007. *Id.* at 5. Upon his incarceration by the CDOC, he was informed that his

---

[1] It appears that Plaintiff may have been informed of his classification even earlier than August 2001. *See Amended Complaint* [#7] at 4. However, the allegations of the Amended Complaint are not clear on this point and the Court assumes that the later date, for which Plaintiff provides much greater detail, is the date when Plaintiff first learned of his classification.

sex offender designation was still active based upon the findings of the 2000 hearing. *Id.* Plaintiff's attempts to seek review of his 2000 classification or obtain a new hearing have been unsuccessful. *Id.* at 6. As a result, Plaintiff complains that he is prevented from possessing sexually explicit reading materials while incarcerated. *Id.* at 6. Specifically, Plaintiff claims that he is prohibited from receiving the Victoria's Secret catalogue.[2] *Id.* Further, because Plaintiff refuses to participate in the CDOC's voluntary sex offender treatment program, he alleges that he is not able to accrue four days of earned-time credit per month. *Id.* at 7.

In his Amended Complaint, Plaintiff alleges that Defendants' conduct constitutes three distinct constitutional violations:

| | | |
|---|---|---|
| Claim I | A First Amendment freedom of the press violation because Plaintiff is unable to receive sexually explicit "reading" materials while incarcerated; | |
| Claim II | A Fifth Amendment due process violation because Plaintiff was labeled a sex offender without notice and an opportunity to be heard; and | |
| Claim III | A Fourteenth Amendment due process violation because Plaintiff was labeled a sex offender without notice and an opportunity to be heard. | |

*Id.* at 8-12.

As a preliminary matter, Plaintiff's due process claims involve an identical fact

---

[2] Victoria's Secret is a clothing retailer which specializes in women's undergarments and whose catalogue frequently contains photographs of female models displaying such undergarments.

pattern.  Although Plaintiff cites different constitutional amendments as a basis for each claim, I construe Claims II and III as a single due process claim asserted pursuant to the Fourteenth Amendment.[3]  Further, although Plaintiff labels his First Amendment claim as an alleged violation of his right to freedom of the press, the proper characterization of the claim is an alleged violation of his right to freedom of speech.  *See Castro v. United States*, 450 U.S. 375, 381 (2003) (noting that it is appropriate for federal courts to ignore the legal labels attached to a *pro se* party's claims "to create a better correspondence between the substance of [the party's claims] and [the] underlying legal basis").

Defendants filed a Motion to Dismiss Plaintiff's claims based on several legal grounds.  First, Defendants assert that Plaintiff's due process claim is barred by the applicable statute of limitations.  *Motion to Dismiss* [#24] at 3-4.  Defendants also contend that Plaintiff's freedom of speech claim fails to state a viable First Amendment injury.  *Id.* at 5-9.  Plaintiff counters that his due process claim did not accrue until he suffered his present injury, namely the deprivation of the opportunity to accrue earned-time credit which began on November 1, 2007.  *Response* [#35] at 1-2.  Plaintiff also contends that the regulation upon which he is denied reading materials is not constitutionally sound.  *Id.* at 2-4.

## II. Standard of Review

The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test "the sufficiency of the allegations within the four corners of the complaint after taking those

---

[3] The proper mechanism for asserting a due process violation against state actors (as opposed to federal actors) is through the Fourteenth Amendment.  *See generally Germany v. Hudspeth*, 209 F.2d 15 (10th Cir. 1954); *Smith v. Kitchen*, 132 F.3d 43 (table) (10th Cir. 1997).

4

allegations as true." *Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994). To survive a Rule 12(b)(6) motion, "[t]he complaint must plead sufficient facts, taken as true, to provide 'plausible grounds' that discovery will reveal evidence to support the plaintiff's allegations." *Shero v. City of Grove, Okla.*, 510 F.3d 1196, 1200 (10th Cir. 2007) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). That is, a complaint must include "enough facts to state a claim to relief that is plausible on its face." *TON Servs., Inc. v. Qwest Corp.*, 493 F.3d 1225, 1235 (10th Cir. 2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the alleged misconduct." *Ashcroft v. Iqbal*, ___ U.S. ___, 129 S. Ct. 1937, 1949 (2009). Moreover, "[a] pleading that offers 'labels and conclusions' or a formulaic recitation of the elements of a cause of action will not do. Nor does the complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (citation omitted).

"The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that defendant has acted unlawfully." *Id.* (citation omitted). As the Tenth Circuit has explained, "the mere metaphysical possibility that *some* plaintiff could prove *some* set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims." *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007). However, "[t]he court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Sutton v. Utah State Sch. for the Deaf & Blind*, 173 F.3d 1226,

1236 (10th Cir. 1999) (citation omitted). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of "entitlement to relief."'" *Ashcroft*, 129 S. Ct. at 1949 (citation omitted).

In support of the Motion to Dismiss, Defendants attached a CDOC regulation which is central to one of Plaintiff's claims and is not otherwise disputed by Plaintiff. In addition, the regulation is a matter of public record. *See Vibe Techs., LLC v. Suddath*, No. 06-cv-00812-LTB-MEH, 2006 WL 3404811, at *5 n.2 (D. Colo. Nov. 22, 2006) (unpublished opinion) ("This Court may take judicial notice of court documents and matters of public record."). Generally, when matters outside the pleadings are presented, the motion must be converted to one for summary judgment and reviewed under the standard set forth in Fed. R. Civ. P. 56. *Alvarado v. KOB-TV, LLC*, 493 F.3d 1210, 1215-16 (10th Cir. 2007). "However, notwithstanding the usual rule . . ., 'the district court may consider documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity." *Id.* at 1215 (quoting *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941 (10th Cir. 2002)); *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007) (noting that court must consider a complaint in its entirety, including "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice"). In addition, the Court may take judicial notice of regulations. *Ray v. Aztec Well Serv. Co.*, 748 F.2d 888, 889 (10th Cir. 1984). Accordingly, consideration of the attached regulation does not require the Court to analyze the Motion to Dismiss pursuant to summary judgment standards.

Finally, the Court must construe the filings of a *pro se* litigant liberally. *See Haines v. Kerner*, 404 U.S. 594, 520-21 (1972); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir.

1991).  However, the Court should not be the *pro se* litigant's advocate, nor should the Court "supply additional factual allegations to round out [the *pro se* litigant's] complaint or construct a legal theory on [his or her] behalf."  *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (citing *Hall*, 935 F.2d at 1110).  In addition, *pro se* litigants must follow the same procedural rules that govern other litigants.  *Nielson v. Price*, 17 F.3d 1276, 1277 (10th Cir. 1994).

### III. Analysis

### A.  Due Process

Defendants argue that Plaintiff's due process claim is barred by the applicable statute of limitations.  *Motion* [#24] at 3-4.  Actions brought pursuant to 42 U.S.C § 1983 are subject to the general personal injury limitation period of the state in which the action arose.  *Wilson v. Garcia*, 471 U.S. 261, 280 (1985); *Hunt v. Bennett*, 17 F.3d 1263, 1265-66 (10th Cir. 1994).  In Colorado, a two-year statute of limitations applies.  *See* Colo. Rev. Stat. § 13-80-102(1)(g), (i) (creating a two-year limitation period for "[a]ll actions upon liability created by a federal statute where no period of limitation is provided in said federal statue" and for "[a]ll other actions of every kind for which no other period of limitation is provided"); *Blake v. Dickason*, 997 F.2d 749, 750-51 (10th Cir. 1993) (applying Colo. Rev. Stat. § 13-80-102 to a § 1983 claim).

By contrast, federal law rather than state law determines when a cause of action accrues.  *Indus. Constructors Corp. v. U.S. Bureau of Reclamation*, 15 F.3d 963, 968-69 (10th Cir. 1994).  Specifically, claims brought pursuant to § 1983 "accrue, for purpose of the statute of limitations, when the plaintiff knows or has reason to know of the injury which is the basis of [the] action."  *Hunt*, 17 F.3d at 1266 (quoting *Johnson v. Johnson County*

7

*Comm'n Bd.*, 925 F.2d 1299, 1301 (10th Cir. 1991)).  A plaintiff may have knowledge of an injury even if he is unaware of all of the evidence ultimately relied on for his cause of action. *Baker v. Bd. of Regents of State of Kan.*, 991 F.2d 628, 632 (10th Cir. 1993).

Once a defendant satisfies the initial burden to show that a claim is untimely, the burden shifts to plaintiff to establish a later accrual date or to show that there is a basis to toll the accrual date.  *Aldrich v. McCulloch Props. Inc.*, 627 F.2d 1036, 1041 n.4 (10th Cir. 1980).  While the statute of limitations is an affirmative defense, the issue may be resolved on a motion to dismiss where the application of the limitations period is apparent on the face of the operative complaint.  *See Dummar v. Lummis*, 543 F.3d 614, 619 (10th Cir. 2008).

Plaintiff's due process claim arises from his classification as a sex offender at a hearing allegedly held in 2000.  *Compare Amended Complaint* [#7] at 5 (March 2000), *with id.* at 8 (December 2000).  Because Plaintiff claims that he was not given notice and an opportunity to be present at the hearing, he alleges that he did not learn of his classification until August 2001.  *Id.* at 4-5.  Given the allegations and dates contained in the Amended Complaint, Defendants argue that Plaintiff's claim regarding the process provided to him in classifying him as a sex offender accrued in August 2001.  *Motion to Dismiss* [#24] at 4. Therefore, Defendants contend that the latest opportunity for Plaintiff to challenge his sex offender classification was August 2003.  *Id.*  They assert that because Plaintiff did not file the present action until October 2009, the issue is clearly time barred.  *Id.*

I find that Defendants have satisfied their initial burden of demonstrating that Plaintiff's Fourteenth Amendment claim is untimely.  Therefore, the burden shifts to Plaintiff to establish a later accrual date or to raise a basis for tolling the accrual date.  *See Aldrich,*

627 F.2d at 1041 n.4.  In his Response, Plaintiff asserts that although he learned of his classification in 2001, his claim did not accrue until he began to lose the opportunity to obtain earned-time credit in November 2007.  *Response* [#35] at 2.  As such, Plaintiff contends that his claim is timely because it was filed prior to November 2009.  *Id.*

Plaintiff's argument that his alleged 2007 injury (after his conviction and sentencing for a new crime) "triggered" the time for filing his case is unpersuasive.  *See* Colo. Rev. Stat. § 13-80-102(1) (creating a two-year limitation period "regardless of the theory upon which suit is brought"); *see also Baker*, 991 F.2d at 632 (holding that a plaintiff may have knowledge of an injury even if he is unaware of all of the evidence ultimately relied on for his cause of action); *Collyer v. Darling*, 98 F.3d 211, 220 (6th Cir. 1996) (holding that a plaintiff need only have "sufficient notice" not "unequivocal notice" for statute of limitations to accrue).  While there appear to be two prevailing viewpoints about when a claim accrues involving a sex offender classification, Plaintiff's argument fails under either theory.

The first theory is that the claim accrues when the inmate learns of his classification.  *See Medina v. CDOC*, No. 08-cv-02654-REB-KMT, 2010 WL 537762, at *5 (D. Colo. Feb. 16, 2010) (unpublished decision) (noting that claim accrues upon knowledge of classification because at that time, it "would put a reasonable person – who, like Plaintiff, believes he is undeserving of such a classification – on notice that alleged wrongful conduct occurred"); *Aurit v. Olin*, No. 08-cv-01248-REB-MEH, 2009 WL 3088132, at *4 (D. Colo. Sept. 21, 2009) (unpublished decision) (holding that operative date is when inmate learned of his classification as a sex offender); *Murphy v. CDOC*, No. 06-cv-01948-REB-BNB, 2009 WL 2959158, at *3-4 (D. Colo. Sept. 10, 2009) (unpublished decision) (holding that "to the extent the plaintiff is challenging his initial classification . . ., the statute of limitations began

9

to run on" the date that "plaintiff received notice of the decision"); Particularly when the classification is levied on an inmate who has not been convicted of a sexual crime, "the potential adverse consequences of [the] classification [alone], . . . may be 'something of value entitled to procedural due process.'" *Mariani v. Stommel*, No. 05-cv-01406, 2006 WL 2598006, at *3 (D. Colo. Aug. 11, 2006) (unpublished decision) (quoting *Chambers v. CDOC*, 205 F.3d 1237, 1243 (10th Cir. 2000)); *see also Kirby v. Siegelman*, 195 F.3d 1285, 1291 (11th Cir. 1999) (recognizing that the stigmatizing impact of the sex offender label implicated a liberty interest pursuant to the Due Process Clause); *cf. Rainge-El v. Moschetti*, No. 05-cv-01831, 2006 WL 1876632, at *4 (D. Colo. July 5, 2006) (unpublished decision) (noting the distinction between inmates who have been convicted of a sex crime and those who have not, and holding that the former are not entitled to due process, apart from their conviction, upon receiving the classification).

The second accrual theory is that the claim accrues after knowledge of the classification <u>and</u> a coercive consequence is levied. *See, e.g.*, *Blake v. Fischer*, No. 09-cv-266, 2010 WL 2522198, at *6 (N.D.N.Y. Mar. 5, 2010) (unpublished decision); *see also Neal v. Shimoda*, 131 F.3d 818, 830 (9th Cir. 1997) (holding that a "liberty interest [is] at stake . . . [when] the stigmatizing consequences of the attachment of the 'sex offender' label [is] coupled with the subjection of the targeted inmate to a mandatory treatment program"). For example, the Tenth Circuit has found that a liberty interest is implicated when the inmate's classification as a sex offender is coupled with a "coercive element," like the conditioning of parole eligibility on participation in a sexual rehabilitation program. *Beierle v. Zavaras*, 215 F.3d 1336 (table) (10th Cir. 2000); *see also Reeves v. CDOC*, 155 P.3d 648, 652 (Colo. Ct. App. 2007) (noting that "an inmate has a liberty interest

10

Case No. 1:09-cv-02388-REB-BNB   Document 47-1   filed 07/22/10   USDC Colorado   pg 11
of 22
Case 1:09-cv-02477-PAB-KLM   Document 39   Filed 07/14/10   USDC Colorado   Page 11 of 21

necessitating due process where the DOC classifies [him] as a sex offender . . . and then requires him or her to participate in sex offender treatment").

Considering the allegations contained in the Amended Complaint, and applying either accrual theory, I find that the statute of limitations began to run in August 2001 when Plaintiff learned that he had been classified as a sex offender by the CDOC and that negative consequences were attached to the classification. At that time, assuming the allegations contained in the Amended Complaint are true, Plaintiff knew that he had been classified as a sex offender without notice or an opportunity to be heard. *See Amended Complaint* [#7] at 4. Plaintiff also knew, by his own admission, that negative consequences flowed from his classification when he was informed that he had to participate in sex therapy or suffer adverse parole consequences.[4] *Id.* at 5. As such, Plaintiff was aware, or should have been aware, that he had an actionable due process claim as of August 2001. *See Fratus v. DeLand,* 49 F.3d 673, 675 (10th Cir. 1995) (holding that a "civil rights action accrues when 'facts that would support a cause of action are or should be apparent'" (citation omitted)). In addition to being the date supported by either accrual theory, August 2001 is the most logical accrual date because it is close in time to when the hearing occurred and when the classification was levied, albeit allegedly without Plaintiff's participation. Accordingly, I find that Plaintiff's Fourteenth Amendment claim accrued in August 2001. Because he filed his lawsuit more than two years after that date, his due process claim is barred by the applicable statute of limitations.

---

[4] Notwithstanding Plaintiff's contention that after he participated in sex therapy he was told he could not be forced to do so, Plaintiff arguably suffered a constitutional injury when he was coerced to participate prior to that time without, as he alleges, any due process protections.

To the extent that Plaintiff's argument could be construed to assert the doctrine of equitable tolling to avoid dismissal of his claim, this Court's analysis is governed by Colorado state law. *See Bd. of Regents of Univ. of State of NY v. Tomanio*, 446 U.S. 478, 484-86 (1980). Colorado's equitable tolling provisions are limited to situations where the "defendant's wrongful conduct prevented the plaintiff from asserting his or her claims in a timely manner." *Dean Witter v. Reynolds, Inc. v. Hartman*, 911 P.2d 1094, 1096 (Colo. 1996). Additionally, the Colorado Supreme Court recognizes tolling only "where extraordinary circumstances make it impossible for the plaintiff to file his or her claims within the statutory period." *Id. at* 1097; *Olson v. State Farm Mut. Auto Ins. Co.*, 174 P.3d 849, 858 (Colo. Ct. App. 2007).

First, Plaintiff does not contend that Defendants wrongfully impeded him from asserting his claim. Second, Plaintiff has failed to provide any extraordinary circumstance, as defined by the Colorado Supreme Court, that would justify tolling. The Colorado Supreme Court has described extraordinary circumstances as circumstances beyond the control of the plaintiff. *See Dean Witter*, 911 P.2d at 1097 (citing *Hanger v. Abbot*, 73 U.S. (6 Wall.) 532 (1867); *Osbourne v. United States*, 164 F.2d 767 (2d Cir. 1947)) (noting that the conditions of Japanese internment during World War II and the closure of southern courts during the Civil War are akin to extraordinary circumstances). The fact that Plaintiff did not suffer a collateral consequence of significance to him until 2007 when he was incarcerated on a new offense does not provide a basis to toll the statute of limitations. Here, Plaintiff's failure to file his lawsuit prior to the expiration of the appropriate statute of limitations was not beyond his control and, despite his lack of legal knowledge, Plaintiff must be held to the same filing requirements of other litigants. *See generally Nielson*, 17

F.3d at 1277 (holding that *pro se* litigants must follow the same procedural rules as other litigants); *see also Viles v. Scofield*, 261 P.2d 148, 149 (Colo. 1953) ("If a [*pro se*] litigant, for whatever reason, sees fit to rely upon his own understanding of legal principles and the procedures involved in the courts, he must be prepared to accept the consequences of his mistakes and errors.").

Although I do not interpret any of Plaintiff's allegations to suggest that the continuing violation doctrine tolls the statute of limitations, I note that while the Tenth Circuit has never explicitly rejected application of the continuing violation doctrine in § 1983 cases; it has held that the doctrine "is simply not applicable to other civil rights actions brought pursuant to Title 42." *Thomas v. Denny's Inc.*, 111 F.3d 1506, 1514 (10th Cir. 1997) (rejecting the doctrine's application to 42 U.S.C. § 1981 claims). Here, Plaintiff's cause of action accrued in August 2001 when he learned of his alleged unconstitutional. *See Amended Complaint* [#7] at 4. In addition, at that time, he was informed that he would suffer negative parole consequences if he did not submit to sex therapy. *See id.* While the classification remains intact today, the time for challenging it has passed. Because the Tenth Circuit has not authorized the application of the continuing violation doctrine in this context, and because I sufficiently doubt its application to Plaintiff's case, I remain convinced that Plaintiff's due process challenge is time barred.

To the extent that Plaintiff's claim could be interpreted as a due process challenge to Defendants' refusal to <u>reconsider</u> his sexual offender classification, see *Amended Complaint* [#7] at 6, 10-11, the challenge fails to state a claim. At least one court in this district has recognized that "the plaintiff does not have a due process right to reconsideration of his sex offender classification." *Murphy*, 2009 WL 2959158, at *4.

Specifically, "[t]here is no authority . . . for the proposition that the Due Process Clause requires the defendants to provide a mechanism for reconsideration of the plaintiff's sex offender classification." *Id.* at *5. This decision was recently affirmed by the Tenth Circuit. *See id.*, *aff'd* 2010 WL 2222779, at *3 (10th Cir. June 4, 2010) (noting that "an inmate in state prison does not have a constitutional right to appeal his sex offender classification in a prison administrative proceeding"). Although both *Murphy* decisions are unpublished, the holdings are sound and, in my independent judgment, applicable here. To the extent that the holdings are premised on the assumption that the inmate first received due process at the time the initial classification was levied, I find that Plaintiff has waived any challenge of his initial classification by not timely raising it. To hold otherwise would effectively circumvent the fact that the statute of limitations has expired. As such, I find that Plaintiff stands in the same position as the inmate in *Murphy* and does not have a due process right to reconsideration of his sex offender classification years after it was assessed.

Accordingly, I recommend that the Motion to Dismiss Claims II and III (which I construe as a single due process claim asserted pursuant to the Fourteenth Amendment) be granted.

**B.      Freedom of Speech**

Defendants argue that Plaintiff fails to state a viable First Amendment claim for the deprivation of sexually explicit reading material. *Motion* [#24] at 5-9. To the extent that Plaintiff contends that a prison regulation unreasonably infringes on his First Amendment rights, Defendants argue that their right to "impose limitations on constitutional rights, including those derived from the First Amendment, . . . [is] implicit in incarceration." *Jones v. N.C. Prisoner's' Labor Union, Inc.*, 433 U.S. 119, 125 (1977). Rather than respond

14

substantively to Defendants' arguments, Plaintiff contends that until due process has been afforded to him, he cannot be subjected to any regulation limiting his reading materials. *See Response* [#25] at 3-4. As noted earlier, Plaintiff's failure to timely raise the constitutional validity of his classification obviates further review. Although this claim could arguably be interpreted as an extension of Plaintiff's due process claim, and therefore barred, the Court considers whether Plaintiff has raised a legitimate First Amendment claim on the basis of the applicable regulation.

As a preliminary matter, I "must accord substantial deference to the professional judgment of prison administrators, who bear a significant responsibility for defining the legitimate goals of a corrections system and for determining the most appropriate means to accomplish them." *Overton v. Bazzetta*, 539 U.S. 126, 132 (2003). To this end, I note the well-established law that prison management functions should be left to the broad discretion of prison administrators to enable them to manage prisons safely and effectively. *See, e.g., Meachum v. Fano*, 427 U.S. 215 (1976). Accordingly, Courts should interfere with the management of prisons only under exceptional and compelling circumstances. *Taylor v. Freeman*, 34 F.3d at 266, 268-70 (4th Cir. 1994). Indeed, the Tenth Circuit has stated that it "abhor[s] any situation or circumstance requiring the intervention of the federal courts in matters involving the administration, control and maintenance by the sovereign states of their penal systems. It is a delicate role assigned to the federal courts to display that restraint so necessary 'in the maintenance of proper federal-state relations.'" *Battle v. Anderson*, 564 F.2d 388, 392 (10th Cir. 1977) (citation omitted). As such, "sweeping intervention in the management of state prisons is rarely appropriate when exercising the equitable powers of the federal courts." *Taylor*, 34 F.3d at 269 (citations omitted).

Both Plaintiff and Defendants identify prison regulations in relation to this claim. However, Plaintiff cites to Administrative Regulation 700-19 ("AR-700-19") while Defendants cite to Administrative Regulation 300-26 ("AR-300-26").[5]   Because the regulation applicable to Plaintiff's First Amendment claim is AR 300-26, I consider whether that regulation could plausibly be found to violate Plaintiff's First Amendment rights.[6]   As such, a reasonableness test applies.  Specifically, "when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests."  *Turner v. Safley*, 482 U.S. 78, 89 (1987).  To this end, the Court considers four factors:

> (1) whether a rational connection exists between the prison policy regulation and a legitimate governmental interest advanced as its justification; (2) whether alternative means of exercising the rights are available notwithstanding the policy or regulation; (3) what effect accommodating the exercise of the right would have on guards, other prisoners, and prison resources generally; and (4) whether ready, easy-to-implement alternatives exist that would accommodate the prisoner's rights.

*Beerheide v. Suthers*, 286 F.3d 1179, 1185 (10th Cir. 2002) (citing *Turner*, 482 U.S. at 89-91).  The *Turner* balancing test is applied to determine the reasonableness of Defendants' conduct in the face of the impact on Plaintiff's First Amendment rights.  *Boles v. Neet*, 486

---

[5] AR 700-19 is the regulation governing the Sex Offender Treatment and Monitoring Program.  AR 300-26 is the regulation governing Offender Reading Material, which also provides that "more stringent individualized standards" may be set "for a specific offender, regardless of the offender's participation in the Sex Offender Treatment and Monitoring Program . . . ."  More specifically, in AR 300-26 Attachment E, individuals who have been classified as sex offenders are prohibited from "subscrib[ing] to or having in [their] possession any sexually oriented materials or periodicals, or other reading or viewing material deemed to be pornographic or contrary to [their] individualized rehabilitative interests and goals."

[6] As noted earlier, I may consider regulations in my review of Plaintiff's Amended Complaint.  Although this regulation is not named in the operative pleading, it is a public record, it is central to Plaintiff's First Amendment claim and Plaintiff does not dispute Defendants' citation to it in their Motion to Dismiss.

F.3d 1177, 1181 & n.4 (10th Cir. 2007).

### Rational Connection to Legitimate Governmental Interest

The threshold question is whether a prohibition on receiving sexually explicit material like the Victoria's Secret catalogue is rationally connected to a legitimate governmental interest.[7] *Sutton v. Rasheed*, 323 F.3d 236, 253 (3d Cir. 2003) (citation omitted) ("The first factor [of the reasonableness test] is 'foremost in the sense that a rational connection is a threshold requirement . . . .").  To move on to the remaining three factors, "the prison administration is required to make a minimal showing that a rational relationship exists between its policy and stated goals." *Beerheide*, 286 F.3d at 1186.

To satisfy their burden here, Defendants need only show that their conduct was rationally connected to "the legitimate government interest put forward to justify it." *Turner*, 482 U.S. at 89.  In this regard, Courts are to give "substantial deference . . . to the prison authorities." *Frazier v. Dubois*, 922 F.2d 560, 562 (10th Cir. 1990).  Here, the purpose and goal of monitoring inmate reading material is stated in the regulation, namely that it is premised on "respect[ing] and respond[ing] to the reading needs and preferences of offenders, consistent with the security needs and good order of DOC's facilities and offices, public safety, and rehabilitative goals set for the offender."  *See* AR 300-26 at 1. Defendants argue "[t]here is a rationale [sic] connection between preventing sex offenders from possessing materials that increase their propensity for acting out and the CDOC's rehabilitative goals." *Motion to Dismiss* [#24] at 8.  In addition, they contend that "there is

---

[7] I note that Plaintiff does not contend that the Victoria's Secret catalogue does not meet the description of sexually explicit reading material prohibited by AR 300-26 Attachment E. Rather, his challenge is limited to whether Defendants have the constitutional authority to prevent him from receiving sexually explicit material given his First Amendment rights.

a valid and rational connection between the restrictions on Plaintiff's access to . . . materials depicting 'scantily clothed individuals' who have been sexually 'objectified' and [the] legitimate governmental interest [of preventing the] . . . 'exacerbat[ion of] existing problems for sex offenders and [the] increase [of] their potential for acting out either sexually or violently.'" *Id.* at 6 (quoting AR 300-26  Attachment E).

Plaintiff does not specifically dispute any of these contentions.  Rather, he argues that until he "has been afforded the Due Process to determine his status as a sex offender" "any argument set forth by Defendants as to . . . *Turner v. Safley*, 482 U.S. 78 (1978) are mute [sic]." *Response* [#35] at 3.  As noted above, such a contention, which is based upon a waived legal challenge, does not speak to the purpose of the regulation advanced by Defendant or whether Plaintiff's First Amendment claim has any plausibility.

Safety and rehabilitation in prison are clearly legitimate goals.  *See Thornburgh v. Abbott*, 490 U.S. 401, 415 (1989) (safety); *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987) (rehabilitation).  Further, despite the fact that the regulation draws a distinction between acceptable reading materials on the basis of content, it does so in relation to the legitimate goals of safety and rehabilitation.  Therefore, the regulation is "'neutral' in the technical sense." *Thornburgh*, 490 U.S. at 415-16.  Further, I find that on its face, the regulation provides a "valid, rational connection" between its prohibitions and the goals of maintaining safety and order and promoting rehabilitation among sex offenders.  Because I find that Defendants' reading privileges limitation is rationally connected to a legitimate government interest, the regulation satisfies the threshold inquiry.

**Alternative Means to Exercise the Inmate's First Amendment Right**

Pursuant to AR 300-26 Attachment E, not all reading materials are prohibited, only

those that are "pornographic, sexually oriented or sexually stimulating." As a result, Plaintiff's inability to receive publications that fall within these categories does not completely deprive him of other opportunities to read and exercise his First Amendment rights. Where the regulation at issue permits "a broad range of publications to be sent, received, and read, this factor is clearly satisfied." *Thornburgh*, 490 U.S. at 418.

### Impact of Accommodation on Government and Others

This factors concerns whether allowing Plaintiff to have sexually explicit reading materials would have an adverse impact on the facility, Plaintiff and other inmates. Despite my ability to resolve the first two *Turner* factors, I am unable to resolve the third factor on the information available to me in the regulation and Amended Complaint. Although Defendants provide legal argument in relation to this factor, without undisputed evidence as to how providing Plaintiff with sexually explicit reading material would impact Plaintiff's rehabilitation or the prison's security, I am unable to determine on the record before me what effect accommodation would have or whether that effect outweighs accommodation. *See, e.g., Reid v. Wiley*, No. 07-cv-01855-PAB-KMT, 2009 WL 1537879, at *6 (D. Colo. May 29, 2009) (unpublished decision) (noting that "court is unable to complete the four-factor balancing analysis set forth by the Supreme Court in *Turner v. Safley*" on a motion to dismiss); *Mitchell v. Wiley*, No. 06-cv-00547-WYD-BNB, 2007 WL 2890095, at *4 (D. Colo. Sept. 26, 2007) (unpublished decision) (agreeing with magistrate judge that unsupported factual assertions about the ultimate constitutionality of a regulation is not a proper basis for resolving a motion to dismiss).

### Existence of Obvious Alternatives

This factor concerns whether Defendants' response to security and rehabilitative

concerns is exaggerated given the existence of "obvious, easy alternatives . . . to fully accommodate the prisoner's rights at *de minimus* cost." *Turner*, 482 U.S. at 90-91; *Thornburgh*, 490 U.S. at 418. Defendants need not show that the regulation or their conduct represented the least restrictive means at the time. *See Thornburgh*, 490 U.S. at 411; *see also Beerheide*, 286 F.3d at 1192 (emphasizing that "this is not a least restrictive test. Prison officials need not demonstrate they have considered or tried all other methods of dealing with the issue before courts will be satisfied with the prison's resolution"). Rather, Defendants run afoul of this factor if their response was unreasonably harsh given the existence of other obvious options. "[W]hen prison officials are able to demonstrate that they have rejected a less restrictive alternative because of reasonably found fears that it will lead to greater harm, they succeed in demonstrating that the alternative they in fact selected was not an 'exaggerated response' . . . . Furthermore, the administrative inconvenience of this proposed alternative is also a factor to be considered and adds additional support to the . . . conclusion that [prison officials] were not obligated to adopt it." *Thornburgh*, 490 U.S. at 419.

Again, on the record before me, I am unable to say whether obvious alternatives to Defendants' prohibition exist. While it may ultimately be the case that no lesser restriction on Plaintiff's reading material is available or would be effective, this issue cannot be resolved pursuant to the Motion to Dismiss.

Although the first two *Turner* factors fall squarely in Defendants' favor upon review of the regulation, I am unable to resolve the remaining two factors. As such, I find that the allegations contained in Plaintiff's Amended Complaint plausibly raise a First Amendment claim and Defendants have failed to show otherwise. Accordingly, I recommend that the

Motion to Dismiss Claim I (which I construe as a First Amendment freedom of speech claim) be denied.

### IV. Conclusion

For the aforementioned reasons, I respectfully **RECOMMEND** that Defendants' **Motion to Dismiss [#24]** be **GRANTED in part and DENIED in part**.

I FURTHER **RECOMMEND** that Claims II and III be dismissed.

I FURTHER **RECOMMEND** that Claim I should not be dismissed at this time.

IT IS FURTHER **ORDERED** that pursuant to Fed. R. Civ. P. 72, the parties shall have fourteen (14) days after service of this Recommendation to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned. A party's failure to serve and file specific, written objections waives de novo review of the Recommendation by the District Judge, Fed. R. Civ. P. 72(b); *Thomas v. Arn*, 474 U.S. 140, 147-48 (1985), and also waives appellate review of both factual and legal questions. *Makin v. Colo. Dep't of Corr.*, 183 F.3d 1205, 1210 (10th Cir. 1999); *Talley v. Hesse*, 91 F.3d 1411, 1412-13 (10th Cir. 1996). A party's objections to this Recommendation must be both timely and specific to preserve an issue for de novo review by the District Court or for appellate review. *United States v. One Parcel of Real Prop.*, 73 F.3d 1057, 1060 (10th Cir. 1996).

Dated: July 14, 2010

BY THE COURT:
 s/ Kristen L. Mix
U.S. Magistrate Judge

21