IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 09-CV-02388-REB-BNB

ANTHONY NATHANIEL ROMERO,
Plaintiff,

v.

JAMES LANDER, M.A., L.P.C., Colorado Dept. of Corrections
Sex Offender Treatment Program Coordinator, and COLORADO
DEPARTMENT OF CORRECTIONS,
Defendants.
_____

**OPPOSITION TO MOTION TO DISMISS SECOND AMENDED COMPLAINT**
_____

**I.      Introduction**

On July 27, 2010, the Court granted Plaintiff leave to file his second amended complaint ("SAC"). Defendants brought this Motion to challenge the sufficiency of the SAC just as they challenged the earlier, *pro se* Amended Complaint.

Defendants demur to each and every claim brought by Plaintiff in the SAC. Defendants not only argue that Plaintiff has failed to plead elements essential to each cause of action, but also claim that Plaintiff is barred by the applicable statute of limitations. In so doing, Defendants make certain unwarranted factual and legal assumptions. Chief among these are two separate, yet related – and disputed – assertions: (a) that the sex offender classification challenged in this suit occurred in September of 2000; and (b) that that classification should be given preclusive, binding

effect, outside of the particular incarceration to which it applied.

Exploration of these issues will expose the fundamental inconsistency with Defendants' arguments: To support the broadest powers in dealing with inmate rehabilitation and the conditions of inmate confinement, Defendants forever minimize the classification as "rehabilitative" and falling within CDOC's powers to administer an inmate during incarceration.  Yet when the question of the classification's durability post-incarceration is raised, Defendants do an abrupt about-face, and claim that their rehabilitative, administrative determinations follow a particular individual for life, much like a felony conviction before a body exercising Article III powers.  As these logical inconsistencies come to light, Defendants' arguments collapse under their own weight.

## II.     Corrections/Supplementation: Assertions of Fact

### A.     **DISPUTED – *Quid Pro Quo* in 1993 Case**

Defendants claim that "[Plaintiff] pled guilty to Criminal Trespassing in 1993 upon dismissal of a charge for Sexual Assault on a Child."  Motion at 1.  Plaintiff alleges that he pled guilty to criminal trespassing mostly in exchange for dismissal of a burglary charge because nobody credited the sex offense.  SAC ¶¶ 29-36.

### B.     **DISPUTED – Nature of May 22, 2009 Action**

Defendants claim that "[o]n May 22, 2009, the SOTMP team at Fremont Correctional Facility reviewed Romero's file and determined he would remain an S-4."  Motion at 3 (top).  Plaintiff claims that the action taken on May 22, 2009, is a distinct classification of him, requiring all due process protections.  SAC ¶¶ 75 & 99-105.

### III. Plaintiff's Claims Are Not Barred by the Statute of Limitations

The logical inconsistency alluded to in the Introduction, above, expresses itself in Defendants' statute of limitations argument in the following way: While elsewhere shooing the Court away from whatever Defendants do behind prison walls as interference with matters of a merely administrative or rehabilitative nature (Motion at 8-13) and emphasizing the abbreviated nature of classification hearings (Motion at 5 n. 2), here they suggest that whatever they do behind prison walls will endure forever and follow an inmate around after discharge, ready to spring forth once again should that inmate ever be reincarcerated.  This amounts to having one's cake and eating it too.

Defendants' argument therefore rests upon an assumption that the date of the wrongful act is necessarily their September, 2000, classification of Plaintiff as a sex offender.  This they treat as a *fait accompli*.  They then naturally conclude that any lawsuit brought in 2009 is well beyond the two-year statute of limitations.

Plaintiff disputes that the September, 2000, classification – which occurred during a prior incarceration – establishes the accrual date.  Plaintiff also disputes that this action would be barred if indeed that classification were chosen as the wrongful act, because there is no way that he could have known of the full nature and extent of his "injury" as of that date.

> A. **DISPUTED –** Classification nine years earlier from prior incarceration does not bar an inmate from challenging classification during subsequent incarcerations.

Defendants argue that Plaintiff's claims are barred by the statute of limitations.

3

Motion at 3-7. In so doing, Defendants conveniently set the accrual date at Sept. 13, 2000. Motion at 5.

Any determination made during a prior incarceration cannot be used as the accrual date for any statute of limitations analysis related to a classification made during a subsequent incarceration. This is because the statute of limitations accrual date cannot have been in 2000 with regards to subsequent, unanticipated classifications during subsequent, unanticipated incarcerations for as-yet uncommitted crimes. After all, an S-4 inmate who refuses to admit to being a sex offender, like Plaintiff, discharges his sentence, leaves prison, and the label vanishes. And after all, even during the remaining period of incarceration an inmate may acquiesce to a classification during one incarceration because, for example, he may be nearing the end of a sentence.[1] This would lessen the impact of any burdens suffered while incarcerated and, not being informed of, and not anticipating, any lasting consequences once discharged, there may be little reason to contest a classification.

The Tenth Circuit has already acknowledged that, because of the lax standards applied in these classification proceedings, the classifications themselves are generally limited to internal usage and are otherwise deprecated. *Gwinn v. Awmiller*, 354 F.3d 1211, 1229 n. 3 (10th Cir. 2004)(general discussion of refusal of courts to give

---

[1] Not all facts have emerged at this time. It does, however, appear that at the time of Plaintiff's September, 2000 classification, he was most of the way through one or more two year sentences imposed in 1999.

preclusive effect to findings made in prison setting under relaxed standards).[2]  The September, 2000 classification was made under such lax standards, and should be confined to the incarceration to which it applied.

   B.  **Disputed –** Plaintiff is Not Barred Even If the 2000 Classification Applies

It cannot be said that Plaintiff knew or should have known, in the exercise of due diligence, that any classification of him for internal prison purposes made in 2000 would foreverafter follow him should he ever again return to prison.  Cases examining what it means to have knowledge of an "injury" generally hold that such knowledge means knowledge of the "nature and extent" of that injury.  *See, e.g., Mastro v. Brodie*, 682 P.2d 1162, 1168 (Colo. 1984)(*en banc*)(("the statute of limitations begins to run when the claimant has knowledge of facts which would put a reasonable person on notice of the *nature and extent* of an injury and that the injury was caused by the wrongful conduct of another.")(emphasis supplied).

Defendant cannot argue that Plaintiff knew or should have known that its wrongful internal prison classification imposed in 2000 put Plaintiff on notice that he would, for the rest of his life, and during any and all future incarcerations, be classified and treated as a sex offender by CDOC.  The most that can be said about the 2000 classification is that Plaintiff no doubt understood its *nature* to be an internal

---

  [2]  Again, there is irony here:  Defendants want minimal intervention in what they do behind the prison's walls, while simultaneously arguing for the sort of finality in whatever they do that is indistinguishable from a felony conviction imposed by a court of law operating under full constitutional constraints.

classification as an S-4 sex offender during his two-year stay with CDOC, and understood its *extent* to be limited to his rights and conditions of confinement during periods before discharge. *See also Exnicious v. U.S.*, 563 F.2d 418, 424-425 (10th Cir. 1972)(application of nature and extent-type analysis – here phrased as "blameless ignorance" – in context of Federal Tort Claims Act litigation).

Given this, and given also the unsettled state of the law or even CDOC's own position regarding the applicability of a classification in subsequent incarcerations,[3] Plaintiff cannot be held to have understood the full nature or extent of any inaccurate and wrongful classification imposed upon him in 2000. The Court should therefore find that Plaintiff's complaint, filed less than one year after the sex offender classification was imposed upon him in the current incarceration, is timely.[4]

## IV.   Plaintiff Has Adequately Stated His Due Process Claims[5]

---

[3] Indeed, given that there appears to be no statute or regulation treating the subject, and given no caselaw on the subject, the issue may be one of first impression.

[4] In any event, this Court should not find Plaintiff's claims to be time barred under a motion brought under FRCP Rule 12(b)(6) unless the issues are plain on the face of the operative complaint. *Dummar v. Lummis*, 543 F.3d 614, 619 (10th Cir. 2008).

[5] While the Motion purports to challenge both Plaintiff's procedural and substantive due process claims – *see* Motion at 7 – nowhere does it challenge any element of Plaintiff's substantive due process claim. Although Defendants make passing reference to the requirement that classification must be based upon "some evidence" – Motion at 5 n. 2 – nowhere do they address the elements of Plaintiff's substantive due process claim (SAC ¶¶ 106-115) or otherwise demonstrate that the claim is defective. Plaintiff must therefore assume that Defendants concede that the substantive due process claim is fairly stated.

The gravamen of Defendants' challenge to Plaintiff's procedural due process claim is that Plaintiff has not identified any due process violation. Motion at 8. To dispel the argument one need only walk through Defendants' treatment of each right:

A.   **DISPUTED –** Plaintiff is Entitled to Another *Chambers* Hearing

Once again treating the May 22, 2009 action as something other than classification of Plaintiff, and again arguing that Plaintiff received all of the process to which he was due during classification proceedings held ten years ago in a prior incarceration, Defendants argue that Plaintiff has no cognizable right to any form of process whatsoever. Motion at 8-9 & n. 5.

Defendants themselves obviously thought the question significant enough to warrant some form of procedure before reclassifying Plaintiff. This has been adequately alleged. SAC ¶ 75. This has also been admitted. Motion at 8 n. 5. This in and of itself undermines Defendants' argument that an inmate returning to prison must necessarily and automatically suffer any and all stigmatizing labels forced upon him during prior incarcerations.

Defendants cite and append *Murphy v. CDOC et al.*, 2010WL2222779 at *3 (10th Cir. (Colo.), June 4, 2010) for the proposition that an inmate has no right to administrative reconsideration of a sex offender classification. *Murphy*, however, is readily distinguished: The question in *Murphy* was whether or not an inmate had a right to administrative reconsideration of the sex offender classification during the *same incarceration* in which the classification occurred. By contrast, the case at hand

7

presents the question of whether or not Defendants may simply reactivate old classifications from prior incarcerations with no process. Nowhere is that question addressed in *Murphy*.

And, while "[t]here is no precedent requiring a new S-4 hearing upon reincarceration" – Motion at 8 – nor is there any precedent or other authority authorizing automatic application of the sex offender label to inmates upon reincarceration. Nor is there anything anywhere which would tend to put inmates on notice that, with CDOC, the sex offender label will last forever, notwithstanding the passage of time, and notwithstanding any amount of CDOC "rehabilitative" treatment. Apparently, CDOC tacitly acknowledges that it is incapable of truly rehabilitating anyone in its program, because nothing is done to identify an inmate's current needs, and the label is simply reimposed based upon proceedings in 2000 that, in turn, were based upon contested events allegedly occurring in 1993. This is not something that can simply be shrugged off. *Vitek v. Jones*, 445 U.S. 480 (1980)(liberty interest in being free of compulsory behavioral modification treatment).

      B.     **DISPUTED –** Earned Time Credits Can Be Part of "Stigma Plus"

To establish that an inmate has no constitutionally protected interest in earned time credits, Defendants accurately cite caselaw holding that: there is no federally-created entitlement to earned time credit in state prison (Motion at 9); awards of earned time are discretionary and in the hands of state prison authorities (*Id.*); and there is generally neither a "right" to earned time credit held by the inmate, nor a corresponding

"duty" on the part of prison authorities to grant earned time (*Id.*).

This argument, like those that follow, ignores *Chambers v. Colorado Dept. of Corrections*, 205 F.3d 1237 (10th Cir. 2000), *cert. denied*. In *Chambers*, the Tenth Circuit indeed recognized that an inmate *could* have a protected liberty interest in earned time credit. *Id.* at 1242-43 & 1243 n.16 (court rejects authority tendered by CDOC to support claim that liberty interest can never attach to earned time credits). In fact, "the potential adverse consequences of [the] classification [alone] . . . may be something of value entitled to procedural due process.'" *Warr v. Zavaras et al.*, No. 09-CV-02477-PAB-KLM at 9-13 (D. Colo. July 14, 2010) (attached as Exhibit 1 to Defendants' Motion)(cite omitted), *quoting Chambers* at 1243.

But most importantly this argument – like those that follow – also ignores that Plaintiff does not challenge the capping of his ability to accrue earned time credits *directly* or as a standalone right, but as a consequence of the unwarranted stigmatization. SAC ¶¶ 77-82 & 91-98. In other words, the capping of earned time credits is the "plus" which, when combined with stigma, can implicate a due process right. *See Chambers* at 1241 (mention of *Sandin v. Conner*, 515 U.S. 472, 479 n. 4 (1995) and "stigma plus" test), at 1242 (stigmatization coupled with capping of earned time credit), and at 1243 (ruling that stigmatization with consequences implicated due process right).[6]

---

[6] In considering each deprivation, it will be useful to keep in mind that no "stigma plus" standard would have developed if the deprivations themselves – *i.e.*, the

C. **DISPUTED –** Parole Eligibility Can Be Part of "Stigma Plus"

Defendants again respond with caselaw supporting the broad proposition that no cognizable Fourteenth Amendment right exists to parole. Motion at 9. Defendants again accurately cite caselaw to support a broad contention, while again missing the point: While Plaintiff may have no generalized right to parole or any given parole date, he may yet have a right to be free of consequences stemming from unfair and unwarranted classification as a sex offender under *Chambers* and *Sandin*. *See* Section IV.B, *supra*. *See* SAC ¶¶ 81, 93, 97-98, 103 & 120.

D. **DISPUTED –** Visitation Restrictions Can Be Part of "Stigma Plus"

True to form, Defendants again simply point to caselaw establishing that inmates have no right of access to any particular visitors, including family members. Motion at 9. Once again, Defendants ignore that however broad their rights may be when exercised in the normal course, they are not so broad as to nullify Plaintiff's right not to suffer unwarranted and unfair consequences under an unwarranted and unfair stigmatization as a sex offender. *See* Section IV.B, *supra*. SAC ¶¶ 79 & 92.[7]

E. **DISPUTED –** Property Restrictions Can Be Part of "Stigma Plus"

---

"pluses" – amounted to legally actionable violations in and of themselves. The "stigma plus" standard is also discussed in *Gwinn* at 1216.

[7] Defendants cite *Wirsching v. Colorado*, 360 F.3d 1191 910th Cir. 2004) for the proposition that prison authorities may deny sex offender's visitation with minor children. Motion at 10. As discussed below in Section V, *Wirsching* involved a *convicted* sex offender.

10

Defendants again present broad authority related to their broad powers – in this case their power to restrict inmate property, including photographs. Motion at 10-11. Defendants again ignore that property restrictions placed upon Plaintiff as a consequence of unfair and unwarranted stigmatization as a sex offender can violate Plaintiff's rights under a "stigma plus" analysis.

With this argument, Defendants actually demonstrate the effect that the stigma already has, even in their own minds. They argue that "[n]ot allowing *a classified sex offender* to possess pictures of minors is not an 'atypical or significant' incident of prison life that warrants due process protections." Motion at 10-11. The argument is recursive; it looks to itself for authority; it pulls itself up by its own bootstraps, again ignoring that Plaintiff has an interest in avoiding stigma plus any atypical hardship. *See* Section IV.B, *supra*. SAC ¶¶ 78 & 92.

      F.    **DISPUTED –** Restrictions on Mail Can be Part of "Stigma Plus"

*See* Sections IV.B-IV.E, *supra*. Restrictions upon mail may still supply the "plus" component in a "stigma plus" analysis. As to any suggestion that allegations about the restrictions placed upon mail are "vague," *see* SAC ¶ 80 (Plaintiff alleges he is not allowed to send mail to, or receive mail from, his children).

      G.    **DISPUTED –** Sex Offender Registration Can be Part of "Stigma Plus"

Defendants again ignore the distinction between wrongful future attempts to force Plaintiff to register as a sex offender as discrete, standalone constitutional violations, and wrongful actions that constitute the "plus" component in a "stigma plus"

11

analysis.

Defendants' argument is based upon first conveniently framing the registration issue as a discrete "claim." Motion at 11 ("Plaintiff's claim is hypothetical."). Thus framed, Defendant moves on to a facile application of ripeness criteria to demolish it.

It should be plain that Plaintiff does not present the issue of whether or not he will be compelled to register as a sex offender as a standalone "claim," but rather as yet another example of a burden or atypical deprivation he faces as a result of the wrongful classification. As to whether or not this issue is purely hypothetical or conjectural, it is noteworthy that CDOC has, in the past, attempted to force Plaintiff to register as a sex offender with local law enforcement during periods of parole, and that Plaintiff has suffered revocation of his parole as a result of his refusal to do so. SAC ¶¶ 42, 67, 103 & 120. There is, therefore, nothing hypothetical or conjectural about the registration issue.

While it may be that the basic legality of any attempt to force him to register as a sex offender could await the day when that force is applied, consideration of CDOC's history and practices in this regard can and should occur now when evaluating what, besides stigma, Plaintiff suffers as a result of the wrongful classification of him as a sex offender. *Gwinn* at 1216 (discussion of "stigma plus" standard).

**V.    The Fifth Amendment Claim**

Plaintiff alleges sufficient compulsion in the SAC. *See, e.g.,* SAC ¶ 120. Defendants correctly note that, in *Wirsching v. Colorado*, 360 F.3d 1191 (10th Cir.

2004), the Tenth Circuit held that denial of visitation with one's children, denial of earned time credits, and certain property restrictions did not constitute sufficient compulsion for Fifth Amendment purposes. *Id.* at 1202-04.

*Wirsching* is readily distinguishable. The plaintiff in *Wirsching* was a *convicted* sex offender. *Id.* at 1194. In these circumstances, the *Wirsching* court found no compulsion where Mr. Wirsching's ability to accrue earned time credits was capped and he was not permitted visitation with his own children after he refused to participate in the sex offender treatment program.

*Wirsching* relies upon *McKune v. Lile*, 536 U.S. 24 (2002). *Id.* at 1202. Specifically, *Wirsching* relies upon Justice O'Connor's concurring opinion in *McKune*, as the narrowest holding supporting the result obtained. *Id.*

*McKune*, like *Wirsching*, also involves a *convicted* sex offender. *McKune* at 29. The forms of compulsion alleged by the plaintiff in *McKune* meant a reduction in privilege status under Kansas law that would ultimately affect visitation rights, opportunities to earn money, work opportunities, the ability to send money to family, canteen expenditures, and access to a personal television. It also meant transfer to maximum-security. *Id.* at 30-31. In sum, *McKune* must be read narrowly as a case in which the consequences did not amount to compulsion for an inmate who was already convicted and stigmatized as a sex offender.[8] Indeed, Justice O'Connor found it

---

[8] *C.f. Wirsching* at 1202 (narrow reading of plurality opinion required).

"troubling" that the plurality set forth no comprehensive theory for the Fifth Amendment privilege against self incrimination. *McKune* at 53 (O'CONNOR, J., concurring in result).[9]

Here, the context is different: Here, Plaintiff is *not* a convicted sex offender. And here, Plaintiff lists forms of compulsion which go beyond those considered in *Wirsching* or *McKune*. *See, e.g.,* SAC ¶ 120 (capping of earned time and negative notations in parole file, all affecting potential length of sentence and casting Plaintiff in false light; compelling registration as sex offender upon release and/or during parole). Even those forms of compulsion which are brushed aside in *Wirsching* and *McKune* must be reconsidered in a new light when it is understood that Plaintiff is not a convicted or admitted sex offender, for even those limitations then become "atypical" deprivations not suffered by other, similarly-situated inmates (*i.e.*, non-sex offenders). After all, these deprivations involve important considerations. *See Wirsching* at 1190 (interest of inmate and other stakeholders in family visitation characterized as "important").

## VI.    The *Ex Post Facto* Clause Claim

As Defendants concede, the *Ex Post Facto* Clause is aimed at laws that retroactively increase the punishment for criminal acts. Motion at 13. Plaintiff has adequately pled that the alleged sex offense occurred in 1993. SAC ¶ 125. Plaintiff has also adequately pled the retroactive application of laws enacted after that date in a

---

[9] Defendants also rely upon *Gwinn v. Awmiller*, 354 F.3d 1211 (10th Cir. 2004). *Gwinn* is also distinguishable because the plaintiff in that case in fact admitted to the sexual assault and participated in sex offender treatment for a time. *Id.* at 1215.

way that "stiffens" Plaintiff's punishment. SAC ¶¶ 126-28; *see also California v. Morales*, 514 U.S. 499, 504 (1995). Essentially, the *Ex Post Facto* Clause is violated because laws enacted after the alleged sex offense permit administrative stiffening of punishments for inmates incarcerated for subsequent infractions. These laws thus reach back and punish the alleged, unproven sex offense, in ways not available at the time of that offense. This is accomplished by window dressing designed to make it seem as if prison authorities are merely undertaking garden variety administrative and rehabilitative tasks. Yet the consequences are drastic, especially when foisted upon an innocent inmate under lax procedural and evidentiary standards, and especially where an inmate's actual, current treatment needs are not even part of the calculus.

**VII.　The Damages Claims**

　　　　Monetary claims are limited to attorneys' fees and costs.

WHEREFORE, Plaintiff requests that this Court overrule the demurrer and otherwise deny the Motion. In the alternative, Plaintiff requests leave to amend the SAC.

　　　　　　　　　　　　　　　　　　　　　　　　RICHARD BYRON PEDDIE, P.C.


　　　　　　　　　　　　　　　　　　　　　　　　By:Richard Byron Peddie
　　　　　　　　　　　　　　　　　　　　　　　　1601 Flemming Drive
　　　　　　　　　　　　　　　　　　　　　　　　Longmont, Colorado 80501
　　　　　　　　　　　　　　　　　　　　　　　　Tel.: 303.444.5447
　　　　　　　　　　　　　　　　　　　　　　　　lawstudios@comcast.net

## CERTIFICATE OF SERVICE

I hereby certify that on August 12, 2010, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following e-mail addresses:

> JOHN W. SUTHERS, Attorney General
> c/o Paul Sanzo, First Assistant Attorney General
> c/o Jennifer Huss, Assistant Attorney General
> Civil Litigation & Employment Law Section
> 1525 Sherman Street – Seventh Floor
> Denver, Colorado 80203
> [paul.sanzo@state.co.us]
> [jennifer.huss@state.co.us]

and I hereby certify that I have mailed or served the document or paper to the following non CM/ECF participants in the manner (mail, hand-delivery, etc.) indicated by the non-participant's name:

n/a

> RICHARD BYRON PEDDIE, P.C.
>
> *[signature]*
>
> By:  Richard Byron Peddie
> 1601 Flemming Drive
> Longmont, Colorado 80501
> Tel.: 303.444.5447
> Fax: 501.639.6038
> E-mail: lawstudios@comcast.net

16