IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Magistrate Judge Boyd N. Boland

Civil Action No. 09-cv-02388-REB-BNB

ANTHONY NATHANIEL ROMERO,

Plaintiff,

v.

JAMES LANDER, M.A., L.P.C., Colorado Department of Corrections Sex Offender Treatment Program Coordinator, individually and in his official capacity, and
COLORADO DEPARTMENT OF CORRECTIONS,

Defendants.
_____

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE
_____

This matter arises on the defendants' **Motion to Dismiss Second Amended Complaint** [Doc. #47, filed 07/22/2010] (the "Motion"). I respectfully RECOMMEND that the Motion be GRANTED.

### I. STANDARD OF REVIEW

In ruling on a motion to dismiss, the court must accept the plaintiff's well-pleaded allegations as true and must construe all reasonable inferences in favor of the plaintiff. City of Los Angeles v. Preferred Communications, Inc., 476 U.S. 488, 493 (1986); Mitchell v. King, 537 F.2d 385, 386 (10th Cir. 1976). The complaint must contain specific allegations sufficient to establish that it plausibly supports a claim for relief. Alvarado v. KOB-TV, L.L.C., 493 F.3d 1210, 1215 n.2 (10th Cir. 2007). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." Scheuer v. Rhodes, 416 U.S. 232, 236 (1974), overruled on other grounds by Davis v. Scherer, 468 U.S. 183 (1984).

## II.  BACKGROUND

The plaintiff initiated this case on October 1, 2009, while proceeding *pro se*.  The plaintiff, through counsel, filed a Second Amended Complaint on June 28, 2010 [Doc. #33-1] (the "Complaint").  The Complaint contains the following allegations:

1.  The plaintiff is currently incarcerated by the Colorado Department of Corrections ("DOC") at the Centennial Correctional Facility.  He is serving a 32 year term for second degree assault.  His sentence was enhanced because he is an habitual offender under Colorado law. *Complaint*, ¶ 8.

2.  In 1993, the plaintiff was dating a woman named Corinne Salazar.  Id. at ¶ 11.  After the plaintiff and Salazar broke up, the plaintiff crept into her house through a window for the purpose of retrieving his personal belongings.  Id. at ¶¶ 14-15.

3.  While inside the house, the plaintiff also stole cash from trousers he found lying on the floor outside the master bedroom.  From that location, the plaintiff could see Salazar in bed with her ex-husband, asleep.  Id. at ¶ 17.

4.  The plaintiff never entered the master bedroom and never saw a child while he was in the house.  Id. at ¶ 18.  After taking the cash and his personal belongings, the plaintiff left the house.  Id. at ¶ 19.

5.  Salazar called the police upon discovering that the plaintiff had been in her house.  As a part of her statement to the police, Salazar claimed that her seven year old daughter was in the bed and that the plaintiff had entered the bedroom and brushed his arm along the blanket covering the daughter's thigh.  Id. at ¶¶ 20-23.

6. Both the plaintiff and her ex-husband admitted that they were asleep during this encounter. They allegedly based their claims on what the daughter told them. Id. at ¶ 24.

7. One of Salazar's older sons stated that the daughter had been coached to make the claims and that they were false. Id. at ¶ 25.

8. The plaintiff was charged with sexual assault on a minor, among other things. Id. at ¶ 27.

9. The trial court expressed doubt about the factual basis for a claim of sexual misconduct. Id. at ¶ 30. The prosecution expressed doubt as to the viability of the sexual misconduct claim and "readily abandoned that claim." Id. at ¶ 32.

10. The plaintiff eventually pled guilty to criminal trespass as a part of a plea bargain, avoiding first degree burglary charges. Id. at ¶ 33.

11. The plaintiff was sentenced to imprisonment. Id. at ¶ 37. He began serving his sentence in 1993. Id. at ¶ 38.

12. In or around 1995, the DOC attempted to classify the plaintiff as a sex offender. Id. at ¶ 39. The plaintiff resisted the classification, but DOC personnel denied him access to the grievance process; told him he could not challenge his classification; and "otherwise deflected Plaintiff's attempts to resist the classification." Id. at ¶ 40.

13. The plaintiff was released on parole in or around 1995. Id. at ¶ 41.

14. While on parole, the plaintiff's parole officer instructed the plaintiff to register with the local authorities as a sex offender. Id. at ¶ 42. The plaintiff refused. Id. at ¶ 43. The plaintiff's parole was revoked, and he was returned to prison. Id. at ¶ 44. He did not contest his

classification as a sex offender because he was soon released, suffered no adverse consequences after his release, and did not expect to return to prison. Id. at ¶ 45.

15. In or around 1999, the plaintiff returned to prison for (1) violation of a restraining order and (2) attempted escape while in police custody. Id. at ¶ 46.

16. In May 2000, the DOC served the plaintiff with a "Notice of Right to an Administrative Review." Id. at ¶ 47. The document stated that, as an inmate "who has never been convicted of a sex offense . . . but [who] has a history of sexual behavior that may justify a sex offender designation," he was entitled to an Administrative Review to challenge such a designation. Id. at ¶ 48. The document informed the plaintiff that he had a right to a hearing upon request; he would be able to present documentary evidence and call witnesses to rebut the designation; and the sole basis for the designation was the "Presentence Report dated 11/23/93, indicating the factual basis for the offense was sexual in nature, and that a plea bargain was made." Id. at ¶¶ 49-51.

17. The plaintiff demanded a hearing and listed his witnesses. Id. at ¶¶ 52-53.

18. The Administrative Hearing was held on September 13, 2000. Id. at ¶ 54. The plaintiff was not permitted to present witnesses. Id. at ¶ 56. The Presentence Report was the only evidence presented to demonstrate that the plaintiff had engaged in sexual misconduct. Id. at ¶ 57. The plaintiff was "given only a limited ability to rebut" the Presentence Report. Id. at ¶ 58.

19. The hearing panel designated the plaintiff as an S-4, which is a classification for inmates who are deemed guilty of unconvicted sexual misconduct. Id. at ¶ 59.

20. After the hearing, the DOC forced the plaintiff to choose between participating in the Sex Offender Treatment and Monitoring Program ("SOTMP") or suffering a reduction in the number of earned time days he could accumulate each month. Id. at ¶ 61.

21. Before an inmate is allowed to participate in SOTMP, he is required to sign an admission that he is a sex offender. Id. at ¶ 62. The plaintiff refused to admit to being a sex offender because he never committed any form of sexual misconduct. Id. at ¶ 63. Consequently, he was rejected by SOTMP, and he was denied four days of earned time credit each month. Id. at ¶¶ 64-65.

22. The plaintiff was released on parole in or around 2003. Id. at ¶ 66. His parole officer instructed him to register with local authorities as a sex offender. Id. at ¶ 67. The plaintiff refused to register as a sex offender. Id. at ¶ 68. His parole was revoked and he was returned to prison. Id. at ¶ 69.

23. The plaintiff discharged his sentence and was released in or around 2005. Id. at ¶ 70.

24. The plaintiff "did not challenge the sex offender classification because he was not initially facing a long sentence, knew of no adverse consequences after discharge, was permitted to visit with his children and retain photographs of them, and chose to accept the cap on his ability to earn earned time credits for the remainder of that incarceration." Id. at ¶ 71.

25. In or around July 2006, the plaintiff returned to prison after being sentenced for second degree assault. Id. at ¶ 72. The plaintiff received a 32 year sentence as an habitual offender. Id. at ¶¶ 73-74.

26. On or about May 22, 2009, the DOC informed the plaintiff that "it had conducted a review of his SOTMP file from prior incarcerations and had determined that it would reimpose the 'S-4' classification imposed during those prior incarcerations." Id. at ¶ 75. The "review" was conducted outside of the plaintiff's presence, without notifying him or giving him any opportunity to be heard. Id. at ¶ 76.

27. As a result of the review, the plaintiff was subjected to new and more stringent restrictions. For example, the DOC took away all photographs in the plaintiff's possession which show his children; refused to permit the plaintiff to visit with his children; and restricted his ability to send mail to and receive mail from his children. Id. at ¶¶ 77-80. In addition, the DOC makes notations in his file indicating his refusal to participate in SOTMP. These notations will become part of the materials considered by the parole board. Id. at ¶ 81.

28. The plaintiff filed grievances contesting his classification and requesting that it be removed or that he be given the opportunity to prove that the classification is improper. The DOC denied the grievances, relying on the 1993 plea agreement, the Presentence Report, and the fact that the "DA pursued charges." Id. at ¶¶ 83-88.

The Complaint asserts four claims. Claim One alleges that the defendants classified the plaintiff in violation of his procedural due process rights. Id. at ¶¶ 100-105. Claim Two alleges that the classification violates the plaintiff's substantive due process rights. Id. at ¶¶ 107-115. Claim Three alleges that the plaintiff is being compelled to admit sexual misconduct in violation of his right against self-incrimination. Id. at ¶¶ 117-123. Claim Four alleges that the defendants' classification of the plaintiff as a sex offender violates the Ex Post Facto Clause. Id. at ¶¶ 125-131. The plaintiff seeks injunctive relief and damages. Id. at pp. 17-18.

## III. ANALYSIS

This action is brought under 42 U.S.C. § 1983, which provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State, . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983.

The defendants assert that claims based on the classification hearing and the consequences of that hearing are barred by the statute of limitation. *Motion*, pp. 3-7.

Actions asserted under 42 U.S.C. § 1983 are subject to the general personal injury limitation period of the state in which the action arose. Hunt v. Bennett, 17 F.3d 1263, 1265 (10th Cir. 1994). The appropriate statute of limitation for §1983 actions arising in Colorado is two years. Id. at 1266; Colo.Rev.Stat. § 13-80-102. "Although a statute of limitations bar is an affirmative defense, it may be resolved on a Rule 12(b)(6) motion to dismiss when the dates given in the complaint make clear that the right sued upon has been extinguished." Torrez v. Eley, 2010 WL 1948679 at *2 (10th Cir. May 17, 2010) (internal quotations omitted) (quoting Aldrich v. McCulloch Props., Inc., 627 F.2d 1036, 1041 n.4 (10th Cir. 1980)).

Federal law rather than state law determines when a cause of action accrues. See Industrial Constructors Corp. v. United States Bureau of Reclamation, 15 F.3d 963, 968 (10th Cir. 1994). "The statute of limitations begins to run when the plaintiff knows or has reason to know of the existence and cause of the injury which is the basis of his action." Id. at 969. "A civil rights action accrues when facts that would support a cause of action are or should be apparent." Fratus v. Deland, 49 F.3d 673, 675 (10th Cir. 1995).

### A. Claims One and Two: Due Process

Claim One alleges that the defendants classified the plaintiff in violation of his procedural due process rights. *Complaint,* ¶¶ 100-105. Claim Two alleges that the classification violated the plaintiff's substantive due process rights. Id. at ¶¶ 107-115.

The Due Process Clause of the Fourteenth Amendment guarantees due process when a person may be deprived of life, liberty, or property. U.S. Const. amend. XIV, § 1. The Due Process Clause "shields from arbitrary or capricious deprivation those facets of a convicted criminal's existence that qualify as 'liberty interests.'" Harper v. Young, 64 F.3d 563, 564 (10th Cir. 1995), *aff'd*, 520 U.S. 143 (1997). The deprivation of a liberty interest can occur procedurally or substantively. County of Sacramento v. Lewis, 523 U.S. 833, 845-46 (1998) (stating that "[t]he touchstone of due process is protection of the individual against arbitrary action of government whether the fault lies in a denial of fundamental procedural fairness or in the exercise of power without any reasonable justification in the service of a legitimate governmental objective") (internal quotations and citations omitted).

The Tenth Circuit Court of Appeals has recognized that a protected liberty interest may arise when government officials deliberately, wrongfully, and publicly label an individual as a sex offender:

> "'Where a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him,' a protectible liberty interest may be implicated that requires procedural due process in the form of a hearing to clear his name." Jensen v. Redevelopment Agency of Sandy City, 998 F.2d 1550, 1558 (10th Cir.1993) (quoting Wisconsin v. Constantineau, 400 U.S. 433, 437, 91 S.Ct. 507, 27 L.Ed.2d 515 (1971)). Damage to one's reputation alone, however, is not enough to implicate due process protections. See Paul v. Davis, 424 U.S. 693, 701, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976) (stating that "reputation alone,

> apart from some more tangible interests such as employment, is neither 'liberty' or 'property' by itself sufficient to invoke the procedural protection of the Due Process Clause"); McGhee v. Draper, 639 F.2d 639, 643 (10th Cir.1981) ("[S]tigmatization or reputational damage alone, no matter how egregious, is not sufficient to support a § 1983 cause of action.").
>
> Instead, a plaintiff asserting that the government has violated the Due Process Clause by impugning his or her "good name, reputation, honor, or integrity," Jensen, 998 F.2d at 1558, must demonstrate that: (1) the government made a statement about him or her that is sufficiently derogatory to injure his or her reputation, that is capable of being proved false, and that he or she asserts is false, and (2) the plaintiff experienced some governmentally imposed burden that "significantly altered [his or] her status as a matter of state law." Paul, 424 U.S. at 710-11, 96 S.Ct. 1155. This is sometimes described as the "stigma plus" standard.

Gwinn v. Awmiller, 354 F.3d 1211, 1216 (10th Cir. 2004).

Here, the Complaint alleges that after an Administrative Hearing on September 13, 2000, the DOC classified the plaintiff as an S-4 sex offender and forced him to choose between participating in SOTMP or suffering a reduction of earned time each month.[1] Therefore, the plaintiff knew or had reason to know of the existence and cause of his injury (*i.e.*, the deprivation of a liberty interest) when the DOC classified him as an S-4 sex offender on September 13, 2000, and deprived him of his earned time. The plaintiff did not file this action until October 2009. Therefore, Claims One and Two are barred by the statute of limitation unless the limitation period is subject to tolling.

The plaintiff argues that his claims did not accrue in 2000 because he did not know the full nature and extent of his injuries. *Response*, pp. 5-6. However, because "the injury in a §

---

[1]The Complaint also alleges that the plaintiff was initially classified as a sex offender in 1995. However, I have used the date most favorable to the plaintiff in my analysis of the Motion.

9

1983 case is the violation of a constitutional right, such claims accrue when the plaintiff knows or should know that his or her constitutional rights have been violated." Smith v. City of Enid ex rel. Enid City Comm'n, 149 F.3d 1151, 1154 (10th Cir . 1998) (internal quotations and citation omitted). "The injury which is the 'basis of the action' in such a case is the violation of some constitutional right, not the physical, mental, or other harm that may have been occasioned by it." Coleman v. Morall, 64 Fed.Appx. 116, 118 (10th Cir. 2003) (citing Smith 149 F.3d at 1154).

The plaintiff further argues that the DOC's "[c]lassification nine years earlier from [a] prior incarceration" does not bar the plaintiff from challenging his classification during his May 2009 incarceration. *Opposition to Motion to Dismiss Second Amended Complaint* [Doc. #54] (the "Response"), p. 3, § A. However, it is clear from the allegations of the Complaint that the plaintiff did not receive a new and separate classification upon reentry into the DOC in May 2009. The Complaint alleges that the DOC reimposed the S-4 classification from the plaintiff's previous incarceration in September 2000.

Nor does the plaintiff have a due process right to reconsideration of his sex offender classification. The Tenth Circuit has stated:

> Neither Chambers nor Gwinn nor any other case from this Circuit hold an inmate who is classified as a sex offender following a hearing that comports with the requirements of due process is entitled to reconsideration of his classification at some later date. Just as there is no federal due process right to appeal a final judgment in a state criminal case (absent a statute affording such a right), an inmate in state prison does not have a constitutional right to appeal his sex offender classification in a prison administrative proceeding.

Murphy v. Colorado Dept. of Corrections, 2010 WL 2222779 (10th Cir. June 4, 2010) (internal citation omitted).

The issue of tolling is governed by Colorado state law. See Fratus v. DeLand, 49 F.3d 673, 675 (10th Cir. 1995). Colorado's equitable tolling provisions are "limited to situations in which either the defendant has wrongfully impeded the plaintiff's ability to bring the claim or truly extraordinary circumstances prevented the plaintiff from filing his or her claim despite diligent efforts." Dean Witter Reynolds, Inc. v. Hartman, 911 P.2d 1094, 1099 (Colo. 1996). "[W]hen the dates given in the complaint make clear that the right sued upon has been extinguished, the plaintiff has the burden of establishing a factual basis for tolling the statute." Aldrich, 627 F.2d at 1041 n. 4.

The plaintiff does not assert that he is entitled to tolling, and it is not plausible under the allegations of the Complaint that tolling would apply in this case.

### B. Claim Three: Right Against Self-Incrimination

Claim Three alleges that the plaintiff is being compelled to admit to sexual misconduct in violation of his right against self-incrimination. *Complaint*, ¶¶ 117-123. Specifically, the plaintiff alleges that he is being subjected to self-incrimination because his failure to admit to the sex offense will result in the DOC "capping the maximum earned or good time credits an inmate may earn; placing restrictions upon who may visit the inmate; confiscating any photographs the inmate may have of his own children; attempting, nonetheless, to force a paroled inmate to register as a sex offender with local law enforcement; and making negative entries in Plaintiff's file that will become part of any materials to be reviewed by any parole board and will cast Plaintiff in a false negative light, making parole difficult or impossible to achieve." Id. at ¶ 120.

"The Fifth Amendment Self-Incrimination Clause, which applies to the States via the Fourteenth Amendment, provides that no person 'shall be compelled in any criminal case to be a

11

witness against himself.'" McKune v. Lile, 536 U.S. 24, 35 (2002) (internal quotations and citations omitted except where noted). "A prison clinical rehabilitation program, which is acknowledged to bear a rational relation to a legitimate penological objective, does not violate the privilege against self-incrimination if the adverse consequences an inmate faces for not participating are related to the program objectives and do not constitute atypical and significant hardships in relation to the ordinary incidents of prison life." Id. at 37-38. "Determining what constitutes unconstitutional compulsion involves a question of judgment: Courts must decide whether the consequences of an inmate's choice to remain silent are closer to the physical torture against which the Constitution clearly protects or the de minimis harms against which it does not." Id. at 41.

Here, the Complaint alleges that after being classified as an S-4 sex offender on September 13, 2000, the plaintiff was required to admit that he is a sex offender; he refused to make the admission; he was denied the opportunity to accrue four days of earned time per month; he was released on parole in or around 2003; and while on parole, he was required to register as a sex offender. He was reincarcerated in July 2006. Thus, the plaintiff knew of the existence and cause of his injury (violation of his right against self-incrimination) no later than July 2006. Because the plaintiff did not initiate this case until October 2009, Claim Three is barred by the statute of limitations.

Even if the claim were not barred by the statute of limitation, the law is clear that the Fifth Amendment privilege against self incrimination is not violated when an inmate is "faced with a choice between the opportunity to earn credits at the higher rate and retain favorable parole status or declining that opportunity by refusing to participate in the treatment program and

12

thereby avoiding the requirement that he admit to committing a sex offense." Gwinn, 354 F.3d at 1226-27 (noting that in Colorado, earned time and parole are discretionary). Nor does a ban on visitation with an inmate's child constitute compulsion. Wirsching v. Colorado, 360 F.3d 1191, 1204 (10th Cir. 2004). Moreover, although the plaintiff's "lack of a prior conviction for a sexual offense may be relevant to other constitutional claims--such as the due process claims . . . that fact does not affect the analysis of the Fifth Amendment compulsion claim. Gwinn, 354 F3d at 1227.

### C. Claim Four

In Claim Four, the plaintiff alleges that the defendants' classification of him as a sex offender violates the Ex Post Facto Clause. The plaintiff alleges that the statutes and regulations relied upon by the DOC in classifying him as an S-4 sex offender and taking action against him to compel him to admit to a sex offense or, in the alternative, the interpretations given to the statutes and regulations, were enacted after the date of the alleged 1993 sex offense. *Complaint*, ¶¶126-27. Claim Four also states that "C.R.S. §§ 16-22-103(2)(a) (persons convicted after July 1, 1994 of non-sex crimes but with factual basis indicating sexual misconduct can be forced to register as sex offenders)" and "16-22-103(2)(d)(II)(C) (CDOC can classify inmates as sex offenders who must register)" run afoul of the Ex Post Facto Clause.

Ex post facto legislation is prohibited by Article I, Section 10 of the United States Constitution. The United States Supreme Court has defined ex post facto legislation as:

> [A]ny statute which punishes as a crime an act previously committed, which was innocent when done, which makes more burdensome the punishment for a crime, after its commission, or which deprives one charged with crime of any defense available according to law at the time when the act was committed.

13

Beazell v. Ohio, 269 U.S. 167, 169-70 (1925).

The plaintiff's classification as a sex offender and the requirement that he participate in SOTMP took place more than two years before he filed his Complaint. In addition, C.R.S. §§ 16-22-103(2)(a) and 16-22-103(2)(d)(II)(C) were enacted in 2002--prior to the plaintiff's release on parole in 2003 and more than two years before he filed his Complaint. Consequently, Claim Four is barred by the statute of limitation.

In addition, even if the claim was not time-barred, the DOC's classification of the plaintiff as a sex offender and the requirement that he participate in SOTMP does not criminalize conduct that was legal before its enactment. Gwinn 354 F.3d at 1227-28 (quoting Chambers v. Colorado Department of Corrections, 205 F.3d 1237, 1242 (10th Cir. 2000)). Moreover, the classification and SOTMP requirement have not increased the plaintiff's punishment because, as discussed below, he has no vested right in a particular parole date. Chambers, 205 F.3d at 1242. Finally, "sex offender registry laws do not fall within the purview of the ex post facto clause because they impose only civil burdens upon sex offenders and do not implicate criminal punishments, as required by the ex post facto clause." Herrera v. Williams, 99 Fed.Appx. 188, 189 (10th Cir. May 18, 2004) (citing Femedeer v. Haun, 227 F.3d 1244, 1253 (10th Cir. 2000)).

## IV. CONCLUSION

I respectfully RECOMMEND that the Motion be GRANTED and that the Complaint be dismissed.

FURTHER, IT IS ORDERED that pursuant to 28 U.S.C. § 636(b)(1)(C) and Fed.R.Civ.P. 72(b), the parties have 14 days after service of this recommendation to serve and file specific, written objections. A party's failure to serve and file specific, written objections

waives *de novo* review of the recommendation by the district judge, Fed.R.Civ.P. 72(b); <u>Thomas v. Arn</u>, 474 U.S. 140, 147-48 (1985), and also waives appellate review of both factual and legal questions. <u>In re Key Energy Resources Inc.</u>, 230 F.3d 1197, 1199-1200 (10th Cir. 2000). A party's objections to this recommendation must be both timely and specific to preserve an issue for *de novo* review by the district court or for appellate review. <u>United States v. One Parcel of Real Property</u>, 73 F.3d 1057, 1060 (10th Cir. 1996).

Dated October 19, 2010.

BY THE COURT:

 s/ Boyd N. Boland
United States Magistrate Judge