IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 09-CV-02388-REB-BNB

ANTHONY NATHANIEL ROMERO,
Plaintiff,
v.
JAMES LANDER, M.A., L.P.C., Colorado Dept. of Corrections
Sex Offender Treatment Program Coordinator, and COLORADO
DEPARTMENT OF CORRECTIONS,
Defendants.

_____

**OBJECTIONS TO RECOMMENDATION OF
UNITED STATES MAGISTRATE JUDGE (DOC. #58)**
_____

**I.   Introduction**

On October 19, 2010, Magistrate Judge Boyd N. Boland recommended that each and every cause of action brought by Plaintiff be dismissed.

One basis for dismissing all claims is the Magistrate's ruling that the claims are barred by the statute of limitations. Recommendation ("Rec.") at 9, 11, 12 & 14.

In recommending dismissal of Plaintiff's Fifth Amendment and *Ex Post Facto* claims, the Magistrate also gives alternative, substantive reasons. With regards to the Fifth Amendment claim, the Magistrate essentially rules that no right is violated where the harm suffered by Plaintiff is loss of something which is, in any event, discretionary. Rec. at 13. With regards to the *Ex Post Facto* Clause claim, the Magistrate essentially concludes that "the requirement that [Plaintiff] participate in SOTMP does not

1

criminalize conduct that was legal before its enactment." Rec. at 14.

## II.     Objections to Statute of Limitations Analysis

A      Mootness v. Lateness: Never the Right Time

Plaintiff objects to the Magistrate's conclusion that his claims are time-barred by the applicable statute of limitations. In particular, Plaintiff objects to the Magistrate's selection of Sept. 13, 2000 as the accrual date for statute of limitations purposes and failure to recognize the May 22, 2009 action as a discrete wrong.  Rec. at 9 & 12.

The flaw in the Magistrate's reasoning becomes apparent once it is considered that after Plaintiff was discharged from the incarceration in which the Sept. 13, 2000 classification took place, he experienced no harm or adverse consequences.  Having fully discharged his sentence, he was released into society, suffered no adverse consequences and was free of any ongoing cognizable legal injury whatsoever.

One can readily surmise what Defendants would have argued if Plaintiff had initiated litigation over the Sept. 2000 classification and then discharged his sentence: They would have called it moot, requested dismissal, and rightly characterized potential classifications arising upon future incarcerations as purely conjectural, and therefore outside the ambit of the cases and controversies which a federal court may hear. When, then, is the proper time for Plaintiff to challenge his May, 2009 classification?

The proper date for statute of limitations purposes should therefore be the date Plaintiff knew, or should have known, of the current injury -- i.e., his *current* classification as a sex offender in the *current* incarceration.  That date is May 22, 2009.

Second Amended Complaint ("SAC") ¶ 75.

>   B       Knowledge of Constitutional Violation:  Discrete Violations

>       1.   What Plaintiff Should Have Known From Past Experience

It seems likely that the Magistrate is adopting, at least in part, Defendants' suggestion that Plaintiff's past experience with classification in two prior incarcerations put him on notice that he would forever automatically be deemed a sex offender. Defendants argue that --

> Plaintiff should have known that the nature and extent of his injury would be classification as a sex offender if he were to reenter CDOC at a later date. Plaintiff admits . . . that he was incarcerated on *three* separate occasions beginning in 1995. . . During each incarceration, Plaintiff was classified as a sex offender based on the 1993 criminal case. . . Taking his history into account, Plaintiff cannot now claim ignorance of the fact that he may eventually return to prison, nor that such would result in his being classified as a sex offender for yet a *third* time.

Reply (Doc. 55) at 2 (emphasis in original).

The fallacy in this argument is easily exposed:  Since Plaintiff was classified as a sex offender in 1995, the fact that he was given a hearing in Sept. 2000 would only tend to underscore the right to a hearing over the classification issue in any new incarceration.  The Sept. 2000 hearing in fact would lead - or mislead - Plaintiff into believing that he would be entitled to a hearing every time he is reincarcerated and CDOC decides to attempt to classify him as a sex offender.

In other words, the history Defendants refer to -- *i.e.,* the facts of the case -- just as easily lead to a conclusion completely opposite the one which Defendants - and apparently the Magistrate - draw from them:  While Plaintiff probably should have

3

known that DOC might *try* to classify him as a sex offender should he ever return to prison, he would be entirely within his rights to assume that, if so, he would be given a hearing, just as he was in 2000. The Court should not find, therefore, that Plaintiff should have known that, upon his third incarceration, he would be classified as a sex offender with no process whatsoever.[1]

### 2. Discrete Injury

The 1995, 2000, and 2009 classifications of Plaintiff as a sex offender should not be conflated and presumed to be a single "injury."[2]

The Magistrate finds that --

> it is clear from the allegations of the Complaint that the plaintiff did not receive a new and separate classification upon reentry into the DOC in May 2009. The Complaint alleges that the DOC reimposed the S-4 classification from the plaintiff's previous incarceration in September 2000.

Rec. at 10. In so finding, the Magistrate has missed Plaintiff's point altogether: It is, in fact, the reimposition of the old, stale classification in 2000, without a hearing, that

---

[1] In the alternative, the Court should indeed find that the statute of limitations should be tolled because DOC itself misled Plaintiff by its actions. *See* Rec. at 11 (discussion of tolling and Colorado standard for equitable tolling).

[2] Contrary to the Magistrate's findings, Plaintiff does *not* solely allege "that after an Administrative Hearing on Sept. 13, 2000, the DOC classified the plaintiff as an S-4 sex offender . . ." Rec. at 9. Plaintiff alleges that he was classified in 1995, 2000, and yet again in 2009. SAC ¶¶ 39, 54, 59 & 75. It should be clear to the Court that the "nature and extent" argument referred to by the Magistrate - Rec. at 9-10 - is offered in the alternative in case the Court is inclined to use either the 1995 or 2000 classifications for statute of limitations purposes. Opposition (Doc. 54) at 3, 5-6. Plaintiff's front-line claim, however, remains that he was classified in May of 2000 without due process, whether or not that DOC action could also be characterized as a "reimposition" of a prior classification or not.

4

forms the basis of the due process claim. In any event, the Magistrate has put too fine a point on the definition of the word "reimpose", failing to perceive how the reimposition of the classification in a new incarceration is itself a classification.[3]

Furthermore, it must be borne in mind that Plaintiff discharged his sentence and was released, free of all injury or adverse consequences. Nowhere in any statute or regulation was he put on notice, however constructive, that DOC was secretly awaiting the opportunity to classify him once again as a sex offender should he ever return to prison. The label lifted; its consequences went away. Thus, classification of Plaintiff again in 2009 must be viewed as a separate, discrete injury. After all, if, for example, DOC tortures an inmate in one incarceration, but the inmate acquiesces, may DOC recommence torturing him in a subsequent incarceration with impunity? The example is a bit extreme, to be sure, but it may help to clarify that DOC's May, 2009 classification of Plaintiff with no hearing is a new, discrete injury.

     C     Plaintiff Does Not Need Reconsideration; He Needs a Hearing

The Magistrate raises the issue of the right to reconsideration of the sex offender classification. Rec. at 10. Plaintiff claims no such right. Plaintiff claims the right to a proper hearing before he is classified as a sex offender during the current incarceration, claims that failure to give him his hearing is a procedural due process

---

[3] If the Court's decision turns on the semantics applied to the word "reimpose" in paragraph 75 of the SAC, Plaintiff requests leave to amend to make it clear that he was classified as a sex offender in May of 2009 with no hearing and based wholly upon prior classifications of him as a sex offender in prior incarcerations in which inadequate procedural safeguards were extended to him.

violation, and that stigmatizing him as a sex offender under these circumstances is a substantive due process violation.

      D      Amount of Process & Shelf Life of Classification

All of the above brings to the forefront the apparently novel question of the durability of a classification as a sex offender from one incarceration to the next. While "[f]inding . . . [a due process] violation in the prison setting is particularly daunting" - *Chambers v. Colorado DOC*, 205 F.3d 1237, 1242 (10th Cir. 2000) - it may be less so in the context of an attempt to make a classification permanent, with collateral effects outside the prison setting, and with full viability from one incarceration to the next.

We have before us, therefore, the question of whether or not, given the procedural safeguards offered to Plaintiff in prior classifications, and given that he has never been convicted of a sex offense, prior determinations that he is a sex offender should be given preclusive effect. We are, essentially, confronted with a question of the applicability of *res judicata*.

Most courts examining whether or not *res judicata* applies to agency adjudications find that "[w]hen an administrative agency is acting in a judicial capacity and resolve[s] disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate, the courts have not hesitated to apply res judicata to enforce repose." *United States v. Utah Construction and Mining Co.*, 384 U.S. 394, 422, 86 S.Ct. 1545 (1966). In determining whether or not a party has had an adequate opportunity to litigate a question, courts look to see whether or not the proceedings

6

"entail the essential elements of adjudication . . ." R.2d OF JUDGMENTS § 83. These elements generally include "notice, the opportunity 'to present evidence and legal argument in support of the party's contentions and fair opportunity to rebut evidence and argument by opposing parties . . ." *Id.; c.f. Utah Construction* at 422. Thus, the Court must examine whether, in either of the prior classifications of Plaintiff in prior incarcerations, sufficient safeguards were present such that *res judicata* should apply.

Plaintiff's allegations, which must be taken as true for FRCP Rule 12(b)(6) purposes, are as follows: (1), he was given *no opportunity* to contest the 1995 action (SAC ¶¶ 39-40); and (2) at the Sept. 2000 hearing, he was given *no opportunity* to present witnesses or his own evidence, and only limited opportunity to rebut argument. SAC ¶¶ 56-68. To fill in the picture we can also take, as evidence, Defendants' admissions about procedural safeguards extended in classification hearings. At best we find that inmates are entitled to:

> (1) written notice of the hearing at least 24 hours before the hearing; (2) an opportunity to present relevant evidence and testimony; (3) a written disposition following the hearing setting briefly forth the ruling, the evidence relied on, and the reason(s) for the ruling; and (4) an unbiased hearing officer.

Motion to Dismiss SAC (Doc. 47) at 5 n. 2.[4] Inmates may not be represented by attorneys at these hearings. The hearing panel is drawn up of prison officials. And, as we have already seen, there is no right to reconsideration or administrative review.

---

[4] There is absolutely no evidence in the record about *how* an inmate might obtain compulsory testimony from witnesses, especially if notified of the hearing only 24 hours beforehand.

7

Thus, we plainly have before us a procedure which, if followed, *might* be adequate for temporary classification of an inmate as a "sex offender" coterminous with a single incarceration.[5] The safeguards do not, however, include enough of the "essential elements of adjudication" to warrant *res judicata* protection. The prior classifications cannot survive into the present incarceration. They cannot, therefore, be the anchors of any statute of limitations analysis.

### III.   Objection to Fifth Amendment Analysis

#### A   Objection to Statute of Limitations Analysis

First, to the extent the Magistrate finds that Plaintiff has not brought his claim before expiration of the applicable statute of limitations, Plaintiff again objects. *See* Section II, *supra*. The Court should note that, contrary to what the Magistrate has written -- Rec. at 12 -- Plaintiff does not rely upon the compulsion applied to him during his second incarceration for his Fifth Amendment claim. Rather, Plaintiff relies upon the compulsion applied to him *now*, in his *current* incarceration. SAC ¶ 75-81.

Compulsion applied to Plaintiff in and after May of 2009 is separate and distinct from compulsion applied in prior incarcerations. There is no reason why Plaintiff should forever lose his right to seek relief for a violation of his constitutional rights simply because he failed to pursue relief during a prior incarceration for a similar violation. To

---

[5] Plaintiff does not believe that, in any event, an inmate ambushed with a hearing to occur within 24 hours and thereafter stigmatized as a sex offender could ever be said to have received adequate process even if the label is limited to that particular incarceration.

8

see this most clearly, the Court need only once again consider whether or not Plaintiff could be subjected to torture in the present incarceration if he had acquiesced to torture in 2000, yet had never sought relief.

      B      Objection to Substantive Analysis

The Magistrate otherwise concludes that those adverse consequences suffered by Plaintiff as a result of his refusal to admit to having ever committed any sex offense does not constitute adequate compulsion for Fifth Amendment purposes.

The Magistrate relies heavily upon *McKune v. Lile*, 536 U.S. 24, 35 (2002). Rec. at 11-12. Specifically, the Magistrate quotes *McKune* to bolster the notion that CDOC's Sex Offender Treatment Program is essentially a "'prison clinical rehabilitation program, which is acknowledged to bear a rational relation to a legitimate penological objective [and] does not violate the privilege against self-incrimination if the adverse consequences an inmate faces for not participating are related to the program objectives and do not constitute atypical and significant hardships in relation to the ordinary incidents of prison life.'" Rec. at 12, quoting *McKune* at 37-38.

As pointed out in Plaintiff's Opposition to Motion to Dismiss SAC ("Opposition"), *McKune* involved a *convicted* sex offender. Opposition (Doc. 54) at 13. One therefore could indeed argue that the Kansas DOC had been charged with the care and rehabilitation of a convicted sex offender who had had his day in court and, admission or not, any reasonable bystander would expect Kansas DOC to do its job and rehabilitate the inmate. Thus, nobody can claim surprise when one "legitimate

penological objective" of Robert G. Lile's incarceration is rehabilitative treatment tailored to his proven predilection to commit sex crimes:  The "prison rehabilitative program" indeed "bear[s] a rational relation to a legitimate penological objective" -- *to wit*: Rehabilitation of Mr. Lile such that he will no longer commit sex offenses.  If he refuses that rehabilitation which fits his proven penological needs, no one feels particularly sorry for him or sense unfairness when he loses privileges or opportunities because of his refusal.

The Magistrate goes on to minimize the consequences visited upon Plaintiff by characterizing these consequences as flowing from some sort of "choice" Plaintiff himself has made which involve, at most, loss of things which are, in any event, discretionary.  Rec. at 12-13.

The argument that there is no constitutional violation because the inmate is merely choosing between -

> the opportunity to earn [discretionary] credits at the higher rate and retain favorable [discretionary] parole status or declining that opportunity by refusing to participate in the treatment program and thereby avoiding the requirement that he admit to committing a sex offense

- Rec. at 12-13 - at least in the context of an inmate who has never been convicted of a sex offense, was debunked in *Chambers,* 205 F.3d at 1243 (liberty interest in not being labeled sex offender and in consequences of label:  "According to the CDOC's stipulations, it has no discretion in applying the label; however, it has whatever discretion it chooses in deciding what conduct satisfies the consequences of the

10

label.").[6]  The Court should accord little weight to the discretionary versus non-discretionary distinction.  In the context of an inmate who has spent over 15 years contesting any characterization of him as a sex offender - even returning to prison twice to avoid the stigma - the consequences are indeed grave, and not to be brushed aside as voluntarily sacrificed "opportunities" or loss of merely discretionary privileges. While *de minimis* harms do not trigger Fifth Amendment concerns - *McKune* at 41 (KENNEDY, J., in plurality opinion) - something short of torture will.  And, if anything, the "Fifth Amendment compulsion standard is broader than the 'atypical and significant hardship' standard" the Supreme Court has adopted for prisoner due process claims. *McKune* at 48 (O'CONNOR, J., concurring, and agreeing with STEVENS, J., joined by SOUTER, J., GINSBURG, J., AND BREYER, J., on this point in their dissenting opinion).[7] Plaintiff

---

[6] The Magistrate refused to draw any distinction whatsoever between cases involving convicted sex offenders and those that do not. Rec. at 13. In so doing, the Magistrate relied upon *dicta* in *Gwinn*:

> [A]lthough the plaintiff's 'lack of a prior conviction for a sexual offense may be relevant to other constitutional claims -- such as the due process claims . . . that fact does not affect the analysis of the Fifth Amendment compulsion claim.'

Rec. at 13, *quoting Gwinn* at 1227.  The quoted portion from *Gwinn*, in turn, relies upon *Searcy v. Simmons*, 299 F.3d 1220, 1227 (10th Cir. 2002).  *Searcy* is yet another case involving a *convicted* sex offender and therefore does not, itself, explore the dichotomy of coercion applied to convicted sex offenders versus coercion applied to those never convicted of a sex offense. *See Searcy* at 1222 (Mr. Searcy charged with sex offense and convicted after entering plea of *nolo contendere*).  The *dicta* in *Gwinn* apparently has no precedent and should be read within the context of the *Gwinn* case:  Mr. Gwinn at one point admitted to having committed a sexual assault and in fact voluntarily completed the first phase of sex offender treatment. *Gwinn* at 1215.

[7] As the opinion resting upon the narrowest grounds, the opinion of O'CONNOR, J., must be regarded as the opinion of the Court.  Wirsching v. Colorado, 360 F.3d

11

therefore suggests that the imposition of these harms - which go beyond mere conditions of imprisonment as alleged in *McKune* - and which are visited upon one who has always maintained his innocence of any sex offense, at great cost to himself, are grave enough to trigger a Fifth Amendment concern.

**IV.    Objection to the *Ex Post Facto* Clause Claim Analysis**

      A     Objection to Statute of Limitations Analysis

Once again, the Magistrate concludes that the claim is time-barred under the applicable statute of limitations. Rec. at 14. Once again, this conclusion naturally flows from the false assumption that the date of classification is the Sept. 2000 classification during the second incarceration. As argued above - Section II - the date of classification should be May 22, 2009.

      B     Objection to Substantive Analysis

The Magistrate concludes that there can be no *Ex Post Facto* Clause violation because the legislation at issue "does not criminalize conduct that was legal before its enactment." Rec. at 14. This ignores the fact that courts have not found *Ex Post Facto* Clause violations solely when legislatures attempt to criminalize past conduct, but also when they "make more burdensome the punishment for a crime, after its commission." *Collins v. Youngblood*, 497 U.S. 37, 42, 110 S.Ct. 2715 (1990). In other words, the *Ex Post Facto* Clause is violated whenever a legislature "stiffens" the punishment for conduct, even though that conduct was in fact already criminal at the time it was

---

1191, 1202 (10th Cir. 2004).

committed.

The Magistrate cites *Herrera v. Williams*, 99 Fed.Appx. 188, 189 (10th Cir. May 18, 2004), and *Femedeer v. Haun*, 227 F.3d 1244, 1253 (10th Cir. 2000) for the proposition that "'sex offender registry laws do not fall within the purview of the ex post facto clause because they impose only civil burdens upon sex offenders and do not implicate criminal punishments, as required by the ex post facto clause." Rec. at 14. Both *Herrera* and *Femedeer* involved *convicted* sex offenders. *Herrera* at 188-89; *see Femedeer v. Haun*, 35 F.Supp.2d 852, 855 (D. Utah 1999). Neither involved the present situation in which the inmate has *never* been convicted of a sex offense, and legislation enacted *after* the unproven conduct is used to compel registration of the inmate, who must be presumed innocent of unproven crimes.

*Femedeer* nevertheless is helpful inasmuch as it sets forth factors which must be considered in determining whether we are in the presence of mere civil burdens, or instead, camouflaged criminal punishments. *Femedeer*, 227 F.3d 1244, 1248-1253.

The Court must first determine whether, on its face, the statute evinces legislative intent one way or the other. *Id.* at 1248. In any event, the analysis must continue, because, as *Femedeer* notes, even where the intent appears to involve civil burdens, the Court must determine ". . . whether the statutory scheme was so punitive either in purpose or effect as to transform what was clearly intended as a civil remedy into a criminal penalty." *Id.* (internal cites/quotations omitted). *Femedeer* goes on to set forth the factors examined to determine whether or not this is the case. *Id.* at 1249.

13

These should be examined now, within the specific context of an inmate who has never been convicted of a sex offense. Specifically, factors 2, 4, 5, 6 and 7 should be examined, as they indicate the presence of more than a mere civil burden within the context of this case:

> *Factor 2: Historically, would it be considered a criminal sanction to require persons who have never been convicted of a sex offense to register as sex offenders?*

The answer to this question must certainly be "yes". While we may say that a convicted sex offender has gone through public indictment, public trial, and public imposition of sentence, and that all of this involves the public dissemination of information - *Femedeer* at 1251 - it is a different matter altogether when one who was merely charged is pilloried before the public for an odious crime and required to register as a sex offender.

> *Factor 4: Does operation of the sanction, when applied to someone who has never been convicted of a sex offense, promote the traditional aims of punishment, retribution and deterrence?*

The answer to this question is almost certainly "yes". Once it is clear that the burden is foisted upon one who is innocent, the sanction operates solely as criminal punishment, for there is no civil rationale for forcing those innocent of sex offenses to register as sex offenders: Indeed, no one can plausibly argue that an inmate innocent of sex offenses is a more appropriate target for this sanction than any other member of the public.

> *Factor 5: Is the behavior to which the sanction applies already a crime?*

14

Curiously, the answer to this question is "no". *Femedeer* at 1252 (triggering "behavior" is *conviction* of sex crime). It cannot be argued that it is a crime simply to be *charged* with a sex crime. The "behavior", therefore, is no crime at all.

*Factor 6: Is an alternative purpose to which the sanction may rationally be connected be assignable to it?*

The answer to this question is almost certainly "no". Our jurisprudence has never attributed rationality to imposing highly stigmatizing burdens normally reserved for those convicted of crimes upon those who have never been convicted of those crimes.

*Factor 7: Is the sanction excessive when applied to one never convicted of a sex offense?*

The answer to this question is almost certainly "yes". Plaintiff has never been convicted of a sex offense. While the sanction does not seem excessive when applied to a convicted sex offender, it crosses the line when applied to one never convicted of a sex offense.

**V.    Conclusion**

Plaintiff respectfully requests that the Court reject the Recommendation.

RICHARD BYRON PEDDIE, P.C.

*/s/ Richard Byron Peddie*

By: Richard Byron Peddie
1601 Flemming Drive
Longmont, Colorado 80501
Tel.: 303.444.5447
lawstudios@comcast.net

## CERTIFICATE OF SERVICE

I hereby certify that on November 5, 2010, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following e-mail addresses:

>JOHN W. SUTHERS, Attorney General
>c/o Paul Sanzo, First Assistant Attorney General
>c/o Jennifer Huss, Assistant Attorney General
>Civil Litigation & Employment Law Section
>1525 Sherman Street – Seventh Floor
>Denver, Colorado 80203
>[paul.sanzo@state.co.us]
>[jennifer.huss@state.co.us]

and I hereby certify that I have mailed or served the document or paper to the following non CM/ECF participants in the manner (mail, hand-delivery, etc.) indicated by the non-participant's name:

n/a

>RICHARD BYRON PEDDIE, P.C.
>
>*/s/ Richard Byron Peddie*
>
>By:  Richard Byron Peddie
>1601 Flemming Drive
>Longmont, Colorado 80501
>Tel.: 303.444.5447
>Fax: 501.639.6038
>E-mail: lawstudios@comcast.net