FILED
United States Court of Appeals
Tenth Circuit

February 2, 2012

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

ANTHONY NATHANIEL ROMERO,

    Plaintiff - Appellant,

v.

JAMES LANDER, M.A., L.P.C., Colorado Department of Corrections Sex Offender Treatment Program Coordinator, individually and in his official capacity; COLORADO DEPARTMENT OF CORRECTIONS,

    Defendants - Appellees.

No. 11-1093
(D.C. No. 1:09-CV-02388-REB-BNB)
(D. Colo.)

---

**ORDER AND JUDGMENT**[*]

---

Before **GORSUCH**, **SEYMOUR,** and **MATHESON**, Circuit Judges.

---

Anthony Nathaniel Romero, a state prisoner, appeals from the district court's grant of a motion to dismiss in favor of the Colorado Department of Corrections and one of its administrators (collectively the "CDOC"). Mr. Romero alleges that the CDOC violated his constitutional rights by classifying him as an S-4 sex offender—a classification that applies to inmates who have a history of sexual assault or deviance for which they may

---

[*]This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

not have been convicted. The district court granted the CDOC's motion to dismiss, concluding that all of Mr. Romero's claims are time-barred. Exercising jurisdiction pursuant to 28 U.S.C. § 1291, we affirm.

## I. BACKGROUND

### A. *Factual Background*

Because the district court granted a motion to dismiss in favor of the CDOC, "we assume the truth of [Mr. Romero's] well-pleaded factual allegations and [recite] them in the light most favorable to [Mr. Romero]." *Cory v. Allstate Ins.*, 583 F.3d 1240, 1244 (10th Cir. 2009) (quotations omitted).

In 1993, Mr. Romero broke into his former girlfriend's home to retrieve items that belonged to him. Once he entered the house, Mr. Romero saw his former girlfriend—Corinne Salazar—asleep in her bedroom with her ex-husband. Mr. Romero did not enter the bedroom. While he was inside Ms. Salazar's home, Mr. Romero retrieved his property and also "stole some cash . . . he found on the floor just outside the master bedroom." Aplt. Br. at 8.

Ms. Salazar discovered that Mr. Romero had been in her home and called the police. Ms. Salazar told the police that Mr. Romero had broken into her home and entered her bedroom, where she was asleep with her seven-year-old daughter. Ms. Salazar claimed that while he was in her bedroom, Mr. Romero inappropriately brushed his arm along a blanket covering her daughter's thigh.

The police arrested Mr. Romero and charged him with one count of first-degree burglary and one count of sexual assault upon a minor. Following his arrest, Mr. Romero

"freely admitted entering [Ms.] Salazar's dwelling on the night in question and stealing the cash." Aplt. Appx. at 8. However, "[a]t all times [Mr. Romero] denied vehemently any suggestion that he had touched, much less seen [Ms. Salazar's daughter]." *Id.*

Pursuant to a plea agreement, Mr. Romero pled guilty to one count of criminal trespass. He did not plead guilty to and was not convicted of first-degree burglary or sexual assault on a minor.

During Mr. Romero's plea proceedings, the state court judge and the prosecutor "expressed doubt about the factual basis for any claim of sexual misconduct" against Mr. Romero. *Id.* And at some point, which is not apparent in the record, Ms. Salazar admitted that she had been asleep the entire time Mr. Romero was in her home. Additionally, Ms. Salazar's son stated that Ms. Salazar had coached her daughter to state falsely that Mr. Romero touched her.

Based on his conviction for criminal trespass, the district court sentenced Mr. Romero to a period of imprisonment.

### 1. *Mr. Romero's First Incarceration and the 1995 Sex Offender Classification*

Mr. Romero began serving his sentence in 1993. In 1995, the CDOC classified Mr. Romero as a sex offender based on the allegation that he had sexually assaulted Ms. Salazar's daughter. "[Mr.] Romero resisted this classification, but CDOC personnel refused to permit him to grieve the process, told him the classification was not something he could challenge, and otherwise deflected [his] attempts to resist the classification." *Id.* at 9.

In 1995, Mr. Romero was released on parole. After his release, Mr. Romero's parole officer instructed him to register with local authorities as a sex offender. Mr. Romero refused. As a consequence of his refusal, Mr. Romero's parole was revoked and he was returned to prison. Mr. Romero did not challenge his sex offender classification at that time "because he was soon released, suffered no adverse consequences after release, and did not expect to return to prison." *Id.*

### 2. *Mr. Romero's Second Incarceration and the 2000 Sex Offender Classification*

In 1999, Mr. Romero was convicted of violating a restraining order and attempting to escape while in police custody. Based on these convictions, a state court sentenced Mr. Romero to another term of imprisonment.

In May 2000, the CDOC served Mr. Romero with a document titled "Notice of Right to an Administrative Review." The document explained that an inmate "who has never been convicted of a sex offense . . . but [who] has a history of sexual behavior that justif[ies] a sex offender designation may [be designated] a[n S-4] sex offender." *Id.* at 10. The CDOC's administrative regulations state that the S-4 sex offender classification applies to inmates who have a history of "sexual assaults or deviance for which they may not have been convicted. These cases often involve plea bargains where the factual basis of the crime involved a sex offense. This category also includes misdemeanor convictions and juvenile convictions for sex offenses." *Chambers v. Colorado Dep't of Corr.*, 205 F.3d 1237, 1240 n.8 (10th Cir. 2000) (quotations omitted).

4

The Notice of Right to an Administrative Review stated that the CDOC planned to classify Mr. Romero as an S-4 sex offender based on a "Presentence Report dated 11/23/93, indicating the factual basis for [his] offense was sexual in nature, and that a plea bargain was made." Aplt. Appx. at 10. Additionally, the document informed Mr. Romero that he was entitled to an administrative hearing to challenge the classification.

Mr. Romero demanded a hearing to challenge his S-4 sex offender classification and submitted a list of witnesses to support his challenge. He was given a hearing on September 13, 2000. During the hearing, the CDOC presented the November 23, 1993 presentence report, which indicated that the factual basis for Mr. Romero's 1999 conviction for criminal trespass was sexual in nature. Mr. Romero was not permitted to present witnesses and was "given only a limited ability to rebut" the CDOC's evidence.[1] *Id.* at 11. Based on its review of the presentence report, the hearing panel determined that Mr. Romero qualified as an S-4 sex offender.

---

[1] We have held that "an inmate who has not previously been convicted of a sex offense may be classified as a sex offender for purposes of a prison treatment program only if the prison affords him the procedural protections to which prisoners facing disciplinary sanctions involving liberty interests are generally entitled." *Gwinn v. Awmiller*, 354 F.3d 1211, 1218 (10th Cir. 2004). Those protections include "notice of the charges, an opportunity to present witnesses and evidence in defense of those charges, and a written statement by the factfinder of the evidence relied on and the reasons for the disciplinary actions." *Id.* at 1219. "Additionally, in order to comport with due process, there must be some evidence to support the hearing panel's decision and the decisionmaker must be impartial." *Id.* (citations omitted).

Because Mr. Romero's claims concerning the 2000 classification hearing are time-barred, we express no opinion on whether the CDOC's failure to permit Mr. Romero to present witnesses during the 2000 hearing deprived Mr. Romero of his right to due process.

After the hearing, the CDOC required Mr. Romero to participate in its Sex Offender Treatment and Monitoring Program ("SOTMP") or to suffer "a reduction in the maximum number of earned time days he could earn each month." *Id.* The CDOC's administrative regulations require an inmate to sign a statement admitting he is a sex offender before the inmate can participate in the SOTMP. Because he had never been convicted of a sex offense and had "never committed any form of sexual misconduct," *id.* at 12, Mr. Romero refused to sign such a statement. As a result, Mr. Romero was not permitted to participate in the SOTMP and did not receive the earned time credit given to inmates who do participate in the SOTMP.

In 2003, Mr. Romero was released on parole. After his release, his parole officer instructed him to register as a sex offender with local authorities. Mr. Romero refused. As a consequence of his refusal, Mr. Romero's parole was revoked and he was returned to prison. Again, Mr. Romero did not challenge his sex offender classification. Mr. Romero was released from prison in 2005.

### 3. *Mr. Romero's Third Incarceration and the 2009 Reimposition of His 2000 S-4 Sex Offender Classification*

In July 2006, Mr. Romero was convicted of second-degree assault. Because he qualified as a "habitual offender," the district court sentenced Mr. Romero to thirty-two years of imprisonment.

From July 2006 through April 2009, the CDOC did not classify Mr. Romero as a sex offender. But on May 22, 2009, the CDOC notified Mr. Romero that "it had conducted a review of his SOTMP file from [his] prior incarcerations and had determined

that it would reimpose the 'S-4' classification [that was] imposed during [his] prior incarcerations." *Id.* at 13.

Mr. Romero was not given an administrative hearing to challenge the CDOC's decision to reimpose the S-4 classification. But he filed two grievances challenging the classification, which the CDOC rejected. As a result of Mr. Romero's S-4 sex offender classification, the CDOC confiscated all of his photos of his children and prohibited him from visiting or corresponding with them. These restrictions did not apply to Mr. Romero during his prior incarcerations.[2]

**B.** *Procedural History*

In October 2009, Mr. Romero filed a pro se lawsuit against the CDOC under 42 U.S.C. §§ 1983 and 1985. He later obtained counsel, who filed an amended complaint under § 1983. The amended complaint alleges that the CDOC violated: (1) Mr. Romero's right to procedural due process by classifying him as an S-4 sex offender, (2) Mr. Romero's right to substantive due process by classifying him as an S-4 sex offender, (3) Mr. Romero's Fifth Amendment right against self-incrimination by requiring him to admit he is a sex offender to participate in the SOTMP, and (4) the Ex Post Facto Clause. The CDOC filed a motion to dismiss, contending that all of Mr. Romero's claims were time-barred. A federal magistrate judge recommended granting the motion.

---

[2] In his amended complaint and on appeal, Mr. Romero claims that the CDOC violated his right to substantive and procedural due process *by classifying him as an S-4 sex offender*. He has not alleged or argued that the CDOC's policy of prohibiting him from contacting his children, in and of itself, violates his constitutional rights. We therefore express no opinion on the constitutionality of the CDOC's policy of prohibiting S-4 sex offenders from having contact or communications with their children.

7

On February 14, 2011, the United States District Court for the District of Colorado issued an order approving and adopting the magistrate judge's recommendation and granting the CDOC's motion to dismiss. The order stated:

> The magistrate judge concluded that each of [Mr.] Romero's four claims is barred by the applicable statute of limitations. I agree with the magistrate judge's analysis. [Mr.] Romero argues . . . that he suffered a separate and discreet injury in May 2009, when the [C]DOC informed him that his previous S-4 classification [would be] applicable during his current incarceration. [Mr]. Romero contends that a new claim accrued in 2009. I disagree. . . . The fact that the consequences of [Mr.] Romero's S-4 classification continue now does not extend the period of limitations. Thus, . . . [the] [C]DOC's decision to continue [Mr.] Romero's S-4 classification during [his] current incarceration does not constitute a separate and distinct cause of [his] alleged injuries. . . . [Mr.] Romero's claims accrued in . . . 2000 and [he] filed his initial complaint in this case on October 7, 2009. Thus, [Mr.] Romero's claims are barred.

*Romero v. Lander*, No. 09-cv-02388-REB-BNB, 2011 U.S. Dist. LEXIS 14224, at *5-6 (D. Colo. Feb. 14, 2011).

Mr. Romero filed a timely notice of appeal challenging the district court's order.

## II.  DISCUSSION

On appeal, Mr. Romero argues that the district court erred in concluding that his claims are time-barred. He further argues that classifying him as an S-4 sex offender violated (1) his right against self-incrimination and (2) the Ex Post Facto Clause.[3]  "We review de novo a district court's ruling regarding the applicability of a statute of

---

[3] Mr. Romero contends that the district court erred in concluding that his substantive and procedural due process claims are time-barred, but he has not addressed the merits of those claims on appeal.

8

limitations." *Bylin v. Billings*, 568 F.3d 1224, 1232 (10th Cir. 2009) (quotations omitted). Because we affirm the district court's ruling that Mr. Romero's claims are time-barred, we need not and do not address the merits of his constitutional claims.

### A. *Statute of Limitations*

"The statute of limitations period for a § 1983 claim is dictated by the personal injury statute of limitations in the state in which the claim arose," *McCarty v. Gilchrist*, 646 F.3d 1281, 1289 (10th Cir. 2011), and that state's "coordinate tolling rules." *Fogle v. Pierson*, 435 F.3d 1252, 1258 (10th Cir. 2006) (quotations omitted).

"We have made clear that the statute of limitations for § 1983 actions brought in Colorado is two years from the time the cause of action accrued," *id.*, unless this period is equitably tolled, *see id.* "Under Colorado law, plaintiffs bear the burden of demonstrating that the statute of limitations should be tolled." *Braxton v. Zavaras*, 614 F.3d 1156, 1159 (Colo. 2010). And in Colorado, "equitable tolling of a statute of limitations is limited to situations in which either the defendant has wrongfully impeded the plaintiff's ability to bring the claim or truly extraordinary circumstances prevented the plaintiff from filing his or her claim despite diligent efforts." *Brodeur v. Am. Home Assurance Co.*, 169 P.3d 139, 149 (Colo. 2007) (en banc) (quotations omitted).

While state law governs the length of the statute of limitations in a § 1983 action, "federal law controls . . . when federal causes of action accrue." *Alexander v. Oklahoma*, 382 F.3d 1206, 1215 (10th Cir. 2004); *see also Wallace v. Kato*, 549 U.S. 384, 388 (2007) ("[T]he accrual date of a § 1983 cause of action is a question of federal law that is *not* resolved by reference to state law."). Generally, federal "claims accrue, and the

9

statute of limitations begins to run[,] when the plaintiff knows or has reason to know of the existence and cause of the injury which is the basis of his action." *Alexander*, 382 F.3d at 1215 (quotations omitted). "In particular, a civil rights action accrues when [the] facts that would support a cause of action are or should be apparent." *Id.* (quotations omitted). "[A] plaintiff must use reasonable diligence in seeking to discover facts giving rise to a claim for relief." *Id.* at 1216.

At the district court and on appeal, Mr. Romero has not alleged that the statute of limitations on his claims should be equitably tolled. We therefore address only whether his claims are timely.

Mr. Romero asserted four claims in his amended complaint. The district court concluded that all the claims are time-barred under Colorado's two-year statute of limitations, stating:

> [Mr.] Romero knew of his S-4 classification in . . . 2000, and he was aware at that time of many of the consequences that classification carries while he is incarcerated in the [C]DOC. [Mr.] Romero lived with those consequences while incarcerated in the [C]DOC until 2003, when he was released on parole.
> The adverse consequences continued after [Mr.] Romero's release. [Mr.] Romero's parole officer instructed [him] to register as a sex offender, [Mr.] Romero refused, and [his] parole was revoked as a result.
> [He] was incarcerated again until 2005. Through this series of events . . . [Mr.] Romero undoubtedly was aware of the "existence and cause of the injury which is the basis of his action." *Industrial Constructors*, 15 F.3d at 969. The fact that the consequences of [his] S-4 classification continue now does not extend the period of limitations.

*Romero v. Lander*, 2011 U.S. Dist. LEXIS 14224, at *5-6.

We agree with the district court's conclusion and analysis. As explained above, a § 1983 claim accrues "when the plaintiff knows or has reason to know of the existence and cause of the injury which is the basis of his action." *Alexander*, 382 F.3d at 1215 (quotations omitted). The injury that is the "basis of action" in a § 1983 claim is the violation of a constitutional right. *See Smith v. City of Enid*, 149 F.3d 1151, 1154 (10th Cir. 1998) ("Since the injury in a § 1983 case is the violation of a constitutional right, such claims accrue when the plaintiff knows or should know that his or her constitutional rights have been violated." (quotations and citations omitted)). Thus, to determine when Mr. Romero's claims accrued, the relevant inquiry is when Mr. Romero knew, or had reason to know, of the alleged constitutional violations that he asserted in his amended complaint. *See id.* (noting that determining when a § 1983 accrued "requires the court to identify the constitutional violation and locate it in time" (quotations omitted)).

As the district court concluded, all the constitutional claims asserted in Mr. Romero's amended complaint relate to two injuries—his classification as an S-4 sex offender and the requirement that he admit to being a sex offender to participate in the SOTMP. Mr. Romero knew of these injuries in 2000, and his constitutional claims based on those injuries accrued at that time.

Mr. Romero concedes that the CDOC first classified him as an S-4 sex offender and required him to admit his sex offender status in 2000. But he argues that his claims are not time-barred for two reasons. First, he contends that the reimposition of his S-4 classification in 2009 was a separate and discrete constitutional injury giving rise to a new two-year statute of limitations period. Second, he argues that, even if the

11

reimposition of his S-4 classification in 2009 did not restart the statute of limitations, his claims accrued in 2009 when he learned the nature and extent of his injuries. We address each argument in turn.

### 1. *Reimposition of Mr. Romero's S-4 Classification in 2009*

Mr. Romero first contends that he is "not suing over the September 2000 classification *per se*—however erroneous—nor its ramifications during that . . . incarceration." Aplt. Reply Br. at 4. Instead, he argues that his claims relate to the CDOC's reimposition of his S-4 classification during his current incarceration. Specifically, Mr. Romero argues that his claims did not accrue until 2009, when the CDOC notified him that it "had conducted a review of his SOTMP file from [his] prior incarcerations and had determined that it would reimpose the 'S-4' classification [that was] imposed during [his] prior incarcerations." Aplt. Br. at 9. We reject this argument.

The injuries that Mr. Romero alleges to have suffered in 2009 are not separate and discrete constitutional injuries from the injuries he claims to have suffered in 2000. *See Smith*, 149 F.3d at 1154 (noting that the statute of limitations on a § 1983 claim accrues when "the constitutional injury, the injury which triggers the statute of limitations for purpose of § 1983, occurred . . . , not when the consequence of that constitutional injury . . . manifested itself"). All the claims in Mr. Romero's 2009 amended complaint are directly linked to events and alleged injuries that occurred in 2000. Indeed, the allegations contained in his amended complaint all explicitly or implicitly reference the 2000 classification.

In claim one, Mr. Romero alleges that "[i]n failing to provide [him] with adequate notice and a meaningful opportunity to be heard, [the CDOC] violated [his] right to [procedural] due process." Aplt. Appx. at 15. In support of this claim, he contends that the CDOC provided "no criteria whatsoever for the sort of evidence that may be relied upon in deciding whether or not to impose the [S-4] sex offender designation." *Id.* Additionally, he alleges that the CDOC provided "no notice whatsoever that a designation imposed during one incarceration would forever[] follow an inmate should he ever again return to prison." *Id.* In his second claim, Mr. Romero argues that the CDOC violated his right to substantive due process by relying on "untested and utterly unreliable [evidence], [and] ignoring actual evidence before them," *id.* at 17, when it classified him as an S-4 sex offender. *Id.*

As explained above, the CDOC conducted an administrative hearing on September 13, 2000, concerning Mr. Romero's S-4 sex offender status. During that hearing, the CDOC considered evidence and concluded that Mr. Romero qualified as an S-4 sex offender. This 2000 hearing is the *only* administrative hearing that Mr. Romero received and the only time the CDOC reviewed evidence to determine whether to impose the S-4 classification on Mr. Romero. Accordingly, to the extent that Mr. Romero's first and second claims challenge the evidentiary standards governing the CDOC's classification decision and the sufficiency of the evidence supporting that decision, they must relate to the 2000 administrative hearing. Additionally, any failure to provide Mr. Romero with notice that his S-4 classification would continue during subsequent incarcerations occurred during the administrative proceeding in 2000. Finally, even if we were to

13

conclude that Mr. Romero was deprived of a protected liberty interest—a necessary element of a procedural due process claim, *see, e.g.*, *Merrifield v. Bd. of Cnty. Comm'rs*, 654 F.3d 1073, 1078 (10th Cir. 2011)—when he was classified as an S-4 sex offender, that deprivation would have occurred in 2000 when the CDOC first classified him. And Mr. Romero has not alleged that he was deprived of a different liberty interest when the CDOC reimposed the S-4 classification on him in 2009. For these reasons, Mr. Romero's first and second claims relate by necessity to his 2000 S-4 classification.

In his third claim, Mr. Romero alleges that the CDOC violated his right against self-incrimination by requiring him to admit that he is a sex offender to participate in the SOTMP. But the CDOC first required Mr. Romero to admit to being a sex offender during his incarceration in 2000.

In his fourth claim, Mr. Romero contends that the CDOC violated the Ex Post Facto Clause because "th[e] statutes and . . . regulations relied upon by [the] CDOC in classifying [him] as a sex offender . . . were enacted after the date of [his] alleged sex offense." *Id.* at 19. But the CDOC relied on these statutes and regulations when it classified him as an S-4 sex offender in 2000, not when it reimposed the S-4 classification on Mr. Romero in 2009.

Based on the allegations contained in Mr. Romero's amended complaint, Mr. Romero knew or should have known of the alleged constitutional violations giving rise to his claims in 2000 when the CDOC classified him as an S-4 sex offender and required him to admit to being a sex offender to participate in the SOTMP. We therefore reject

14

Mr. Romero's argument that the constitutional claims asserted in his amended complaint accrued in 2009 when the CDOC reimposed the S-4 classification on him.

### 2. *Mr. Romero's Nature and Extent Argument*

Mr. Romero next argues that, even if his challenge is construed as applying to his S-4 classification in 2000, his claims are not time-barred. He relies on a Colorado Supreme Court case indicating that a plaintiff does not have knowledge of an injury unless he or she knows "the 'nature and extent' of that injury." Aplt. Br. at 15 (quoting *Mastro v. Brodie*, 682 P.2d 1162, 1168 (Colo. 1984) (en banc)). He contends that, even if he knew of his injury, he did not understand its extent because it "cannot be said that [he] knew or should have known that [his S-4] classification . . . in 2000 would forever follow[] him should he ever again return to prison." Aplt. Br. at 20. We reject this argument for two reasons.

First, federal law, not state law, controls when a claim accrues for statute of limitations purposes. *Wallace*, 549 U.S. at 388 ("[T]he accrual date of a § 1983 cause of action is a question of federal law that is *not* resolved by reference to state law."). Thus, Mr. Romero's reliance on Colorado state case law is misplaced.

Second, even if we accepted Mr. Romero's assertion that he lacked knowledge of the future impact of his classification,[4] his argument ignores Tenth Circuit precedent

---

[4] Although Mr. Romero contends that it cannot be said that he did not know that his classification would follow him after his 2000 incarceration, in his amended complaint he states that after his release from prison in 2003, his parole officer required him to register as a sex offender outside of the prison. We agree with the district court's conclusion that after this event, Mr. Romero knew or should have known that his S-4 classification would apply beyond his 2000 incarceration.

15

holding that "[a] plaintiff need *not* know the *full extent* of his injuries before the statute of limitations begins to run." *Indus. Constructors Corp. v. United States Bureau of Reclamation*, 15 F.3d 963, 969 (10th Cir. 1994) (emphases added). Indeed, we have explained that once a plaintiff knows of his injury, his "belie[f] [that] the injury was only temporary is irrelevant" to the determination of when his claim accrued. *Robbins v. United States*, 624 F.2d 971, 973 (10th Cir. 1980).

For these reasons, we reject Mr. Romero's "nature and extent" argument.

\* \* \*

In affirming the district court's ruling that Mr. Romero's claims are time-barred, we recognize that Mr. Romero's amended complaint alleges constitutional violations and a sympathetic set of circumstances. Because we hold the alleged claims time-barred, we express no views on their merits. But as the Supreme Court has recognized, "[i]t goes without saying that statutes of limitations often make it impossible to enforce what were otherwise perfectly valid claims." *United States v. Kubrick*, 444 U.S. 111, 125 (1979).

### III.  CONCLUSION

Under Colorado law, the statute of limitations for a § 1983 claim is two years. Under federal law, the statute of limitations on a §1983 begins to run when the facts that would support a cause of action are or should be apparent. Under this standard, all of Mr. Romero's claims accrued in 2000, when the CDOC classified him as an S-4 sex offender following an administrative hearing and required him to admit to being a sex offender to participate in the SOTMP. Mr. Romero did not file his initial complaint until October 7,

16

2009, well outside the two-year statute of limitations.  We therefore affirm the district court's dismissal of Mr. Romero's claims.

                                  ENTERED FOR THE COURT


                                  Scott M. Matheson, Jr.
                                  Circuit Judge

**UNITED STATES COURT OF APPEALS**
**FOR THE TENTH CIRCUIT**
**OFFICE OF THE CLERK**

Byron White United States Courthouse
1823 Stout Street
Denver, Colorado 80257
(303) 844-3157

| | | |
|---|---|---|
| Elisabeth A. Shumaker<br>Clerk of Court | February 02, 2012 | Douglas E. Cressler<br>Chief Deputy Clerk |

Mr. Richard Byron Peddie
Richard Byron Peddie, P.C.
1601 Flemming Drive
Longmont, CO 80501-0000

**RE:**   **11-1093, Romero v. Lander, et al**
Dist/Ag docket: 1:09-CV-02388-REB-BNB

Dear Counsel:

Enclosed is a copy of the order and judgment issued today in this matter. The court has entered judgment on the docket pursuant to Fed. R. App. P. Rule 36.

Pursuant to Fed. R. App. P. Rule 40, any petition for rehearing must be filed within 14 days after entry of judgment. Please note, however, that if the appeal is a civil case in which the United States or its officer or agency is a party, any petition for rehearing must be filed within 45 days after entry of judgment. Parties should consult both the Federal Rules and local rules of this court with regard to applicable standards and requirements. In particular, petitions for rehearing may not exceed 15 pages in length, and no answer is permitted unless the court enters an order requiring a response. If requesting rehearing en banc, the requesting party must file 18 paper copies with the clerk, in addition to satisfying all Electronic Case Filing requirements. *See* Fed. R. App. P. Rules 35 and 40, and 10th Cir. R.35 and 40 for further information governing petitions for rehearing.

Please contact this office if you have questions.

Sincerely,

Elisabeth A. Shumaker
Clerk of the Court

cc: Jennifer Susan Huss

EAS/sds

Case No. 1:09-cv-02388-REB-BNB   Document 80   filed 02/02/12   USDC Colorado   pg 19 of 19

Appellate Case: 11-1093   Document: 01018788111   Date Filed: 02/02/2012   Page: 2